The appellant, Milton Allen Watkins, was convicted of selling a controlled substance (cocaine), a violation of § 13A-12-211, Ala. Code 1975. He was sentenced pursuant to the Habitual Felony Offender Act, § 13A-5-9, Ala. Code 1975, and pursuant to the enhancement provisions of §§ 13A-12-250 and -270, Ala. Code 1975, to serve 20 years in prison. The appellant's only contention on appeal is that he was denied his constitutional right to counsel at trial. Because we agree, we must reverse his conviction.
The trial court apparently determined that the appellant was indigent and appointed James Moffatt to represent him. On October 2, 1996, Moffatt filed a motion to withdraw, and the trial court appointed Jonanna Owings to represent the appellant. The case was originally set for trial on November 4, 1996, but it was continued until the court term beginning February 10, 1997. On February 13, 1997, after the attorneys had questioned the potential jurors, but before the jury was struck, the following occurred:
 "Ms. Owings: Your Honor, we have another motion at this point in time. I would like to withdraw from the case. My client has informed me that he wishes to dismiss me as counsel.
 "The Court: Mr. Watkins, do you want to come up, please, sir?
"(The Defendant approaches the bench.)
"The Court: Mr. Watkins?
"The Defendant: Yes, sir.
"The Court: State your name.
"The Defendant: Milton Allen Watkins.
 "The Court: Mr. Watkins, do you understand that you are the Defendant in this particular case before the Court?
"The Defendant: Yes, sir.
 "The Court: Mr. Watkins, I'm informed at this time by Ms. Owings, who is the public defender and assigned to this particular case, that you have requested that she no longer represent you?
"The Defendant: Yes, sir.
 "The Court: All right. Do you want to state for the Court the reasons why or what the problems would be?
 "The Defendant: We're not seeing eye to eye. I asked her to do a couple of things, and she hasn't done them. So I feel I need to hire me an attorney.
". . . .
 "The Court: Let the record reflect that the Defendant was in court on October the 18th of 1996 along with his attorney, the Honorable Jonanna Owings. The Defendant entered a plea of not guilty and the case was set for trial on November the 4th. He was not reached that week, and we are now in the February 10 term of court, and this is the time set for the case to be tried. I'm understanding right now that you want her dismissed, Mr. Watkins? As the Court sees it now, it's a little late. I've got people sitting out here ready to be struck as a jury. We are not going to be able to just continue this just because you are not happy with Ms. Owings.
 "The Defendant: I was incarcerated, Your Honor, and I didn't have time — I never had time to talk with her until really this week. So now I'm just — that's why I now know I'm not satisfied with her because this is really my first week to talk to her.
 "The Court: Well, Mr. Watkins, I think it's clear — did you meet with Ms. Owings yesterday? Did you personally meet with her?
"The Defendant: Yes.
 "The Court: You were up here, as I recall, looking for her and went to her office and met with her and nothing was brought to this Court's attention before today regarding the fact that you were unhappy with the services of Ms. Owings. This case was set and started at 11:00. . . .
". . . .
 "Mr. Jones [Prosecuting Attorney]: The State's position is that this case is set to go to trial. The venire panel is ready. The State is ready. If Mr. Watkins wishes to *Page 238 
fire his attorney, we have no objection to trying him and letting him represent himself. We're prepared to go to trial right now.
 "The Court: Well, that's where we are. I'm going to try this case. It's unfair to everybody involved to continue this case at this stage, and I'm just not prepared to.
". . . .
 "The Court: . . . [B]ut we're not going to get to the date of court and say all of a sudden, we're not happy with our attorney. We can't run a court system that way.
 "The Defendant: It's not that I didn't try to do something. It's just that I've been incarcerated.
"The Court: When did you get out of jail?
"The Defendant: Two weeks ago.
"The Court: Two weeks ago?
"The Defendant: Yes, sir.
 "The Court: Well, this is the first I've heard of any situation that's developed that you are not satisfied with Ms. Owings. If that's what you want, I'll certainly grant it. I'm not going to sit here and make her try a case that you want her fired on or her services to be terminated on. I'm not going to make her try this case.
 "The Defendant: So in all fairness to me, you won't give me a chance to hire an attorney?
"The Court: No, sir, I will not.
"The Defendant: Is that fair? Is that legal?
"The Court: Yes, sir.
"The Defendant: You can make me —
 "The Court: That's my ruling. I'm the judge. I'm going to make the ruling.
"The Defendant: Yes, sir. I understand that.
"The Court: We'll just be ready to proceed then.
 "The Defendant: I feel if I had a chance to hire an attorney, I mean, I could go to trial.
"The Court: Well, we're not going to do that.
 "All right. Ms. Owings, you are allowed to be released as his attorney on his request.
 "The Defendant: If I can't have time to get one, I will take her. I can't go against him. He's been to law school.
 "The Court: We're not going to sit here and bargain. What you are telling me is if you can't have it your way, you'll go back and let her represent you. I'm not into bargaining about this situation. I'm offering you an opportunity to have a fair trial. I'm trying to be fair to everybody concerned here, you included, Ms. Owings included, everybody. But we're not going to get up here and if it doesn't work out like you want it to, you'll go back and say, forget it all. What are you telling me you want to do? I'm telling you, we're going to try the case today. Now, how do you want to try that? Do you want to confer with Ms. Owings again?
"The Defendant: Yes, I have to —
 "The Court: Ms. Owings, do you mind talking to the Defendant for a short time, and I'll respect anything you want to do?
"Ms. Owings: Yes, sir.
"(Brief recess.)
 "Ms. Owings: I'm not quite certain what to do at this point in time, Judge. I think it's my job to represent Mr. Watkins as public defender. He's pointed out to me that he's not happy with one or two things that I've done. You have given us five minutes to talk about it and during that time he says that if he has to he'll accept me as his attorney, but in the same breath he says that he's very unhappy with a portion of what I have done.
 "The Court: Well, to be quite frank with you, I think we're in a hard situation representing a person with those feelings expressed and once he finds out he has no other alternative, then he says that you are going to represent him. I think that's unfair to you so I'm going to allow you to be excused and be relieved as attorney representing Mr. Watkins.
"(The Defendant approaches the bench.) *Page 239 
 "The Court: I've dismissed Ms. Owings as your attorney. Okay. We're going to proceed.
 "The Defendant: I still want her. I told her that.
 "The Court: No. We're not going to do that. We're going to proceed without her.
 "We may need some assistance in striking the jury. I don't mind if Ms. Owings wants to help him strike the jury."
(R. 11-22).
During the State's closing argument, the following occurred:
 "Mr. Jones: Ladies and gentlemen, Mr. Watkins fired his lawyer, Mr. Watkins —
 "The Defendant: I object. I did not fire my lawyer. The Judge dismissed my lawyer."
(R. 106).
Finally, after the trial court instructed the jury, the following occurred:
 "The Court: Do you except to any charge that I've given?
 "The Defendant: You said anything the lawyer said wasn't evidence, only what the Defendant — what the witnesses said?
"The Court: Right.
 "The Defendant: But you didn't explain that also I was a lawyer plus a witness so what I said is evidence.
"The Court: Well, no. You didn't testify.
 "That was the distinction. You were acting — anything you said in court today was all in your role as an attorney, because if you remember there was no testimony that you gave. So I think we've fairly covered that in the instruction.
 "The Defendant: Ms. Owings told me that you dismissed her.
 "The Court: I did dismiss her at her request. I did dismiss her, but that was based on the fact that you dismissed her services.
 "The Defendant: Then you gave us time and you said that we could talk about it.
 "The Court: Well, I wanted you all both to understand what I was doing and why, but we're not going to go back through that again. Okay. We've tried the case. I'm not going back through that again, but as far as my charges, is there anything else?
 "The Defendant: That was one of your charges. I didn't dismiss her.
 "The Court: Have you stated for the record what you wanted to say about that?
"The Defendant: I didn't dismiss her.
 "The Court: Okay. Your testimony is that you did not dismiss her?
"The Defendant: Correct.
 "The Court: What happened? What was the reason why she made the motion to be dismissed as attorney for you, Mr. Watkins? What was the reason for that, in your judgment?
 "The Defendant: The final reason was that she told me that you dismissed her. The was the final reason.
"The Court: Okay.
 "The Defendant: That's what she told me out of her mouth.
"The Court: All right. I understand."
(R. 117-19).
This court addressed a similar situation in Stanley v. State,703 So.2d 1027 (Ala.Cr.App. 1997), as follows:
 " 'In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case. In order to conduct his own defense, the defendant must "knowingly" and "intelligently" waive his right to counsel, because in representing himself he is relinquishing many of the benefits associated with the right to counsel. Faretta, 422 U.S. at 835 [95 S.Ct. at 2541]. The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " Faretta, 422 U.S. at 836 [95 S.Ct. at 2541] (other citations omitted).
 " 'The burden of proof in the present case is on the defendant. When a defendant *Page 240 
has clearly chosen to relinquish his right to counsel and has asserted his right to self-representation, and on appeal asserts that he was denied the right to counsel, he has the burden of showing, " 'by a preponderance of the evidence, that he did not intelligently and understandingly waive his right to counsel.' " Teske v. State, 507 So.2d 569, 571 (Ala.Cr.App. 1987), quoting Moore v. Michigan, 355 U.S. 155, 161-62, 78 S.Ct. 191 [195], 2 L.Ed.2d 167 (1957). The Supreme Court in Carnley v. Cochran, 369 U.S. 506, 516-17, 82 S.Ct. 884 [890-91], 8 L.Ed.2d 70
(1962), held that when the record clearly shows that a defendant has expressly waived his right to counsel, the burden of proving that his waiver was not made knowingly and intelligently is on the defendant. "A waiver of counsel can only be effectuated when the defendant asserts a 'clear and unequivocal' right to self-representation." Westmoreland v. City of Hartselle, 500 So.2d 1327, 1328 (Ala.Cr.App. 1986), citing Faretta, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. If the record is not clear as to the defendant's waiver and request of self-representation, the burden of proof is on the State. Carnley, 369 U.S. at 517 [82 S.Ct. at 891]. Presuming a waiver from a silent record is impermissible. Carnley.
 " 'Here, the record reflects that the court offered to appoint counsel for [the defendant]. The case action summary sheet states that on September 10, 1987, [the defendant] notified the court that he would retain his own counsel. In a letter to the court, [the defendant] expressly requested that the attorney he had retained be released. Also, in the letter, [the defendant] asserted his right to self-representation. On April 1, 1988, at the plea docket [the defendant] again asserted the right to represent himself. Because [the defendant] clearly asserted the right to self-representation and waived the right to counsel, he must prove that his waiver was not made knowingly and intelligently.
 " 'Although the Supreme Court in Faretta states that a defendant should be made aware of the dangers and disadvantages of self-representation, the Supreme Court does not require a specific colloquy between the trial judge and the defendant. "The case law reflects that, while a waiver hearing expressly addressing the disadvantage of a pro se defense is much to be preferred, it is not absolutely necessary. The ultimate test is not the trial court's express advice but rather the defendant's understanding." Fitzpatrick v. Wainwright, 800 F.2d 1057 (11th Cir. 1986) (citations omitted). In each case the court needs to look to the particular facts and circumstances involved, "including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).
 " 'This court looks to a totality of the circumstances involved in determining whether the defendant knowingly and intelligently waived his right to counsel. Jenkins v. State, 482 So.2d 1315 (Ala.Cr.App. 1985); King v. State, 55 Ala. App. 306, 314 So.2d 908 (Ala.Cr.App. 1975), cert. denied, Ex parte King, 294 Ala. 762, 314 So.2d 912 (1975).'
 "Tomlin, 601 So.2d at 128-29 (emphasis added [in Tomlin].)
 "Unlike the defendant in Tomlin, the appellant did not ask that he be allowed to represent himself. As can be seen from the colloquy between the trial court and the appellant, the appellant's 'waiver' was no waiver at all. The trial court informed the appellant that the appellant would be representing himself. Even after the appellant asked for another attorney to be appointed, the trial court refused and again stated that the appellant would be representing himself.
 "We are not unmindful of the trial court's frustration in this matter. The appellant was attempting to have the trial court appoint yet another attorney to represent him on the eve of the trial. However, the solution was not for the trial court to summarily violate one of the appellant's basic constitutional rights. The trial court should have (1) refused to dismiss the appellant's *Page 241 
second appointed attorney; (2) appointed another attorney and continued the case; or (3) engaged in a sufficient dialogue to discover if the appellant wished to represent himself and, if so, determined if the appellant understood all the implications of this waiver.
 "The appellant did not make a 'clear and unequivocal' waiver of his right to be represented by counsel. The trial court's judgment is reversed and this case remanded."
703 So.2d at 1027-1029 (footnote omitted). See also Leslie v.State, 703 So.2d 1029 (Ala.Cr.App. 1997).
Rule 6.1, Ala. R.Crim. P., regarding a defendant's right to counsel in a criminal proceeding, provides, in pertinent part, as follows:
 "(a) Right To Counsel. A defendant shall be entitled to be represented by counsel in any criminal proceedings held pursuant to these rules and, if indigent, shall be entitled to have an attorney appointed to represent the defendant in all criminal proceedings in which representation by counsel is constitutionally required. The right to be represented shall include the right to consult in private with an attorney or the attorney's agent, as soon as feasible after a defendant is taken into custody, at reasonable times thereafter, and sufficiently in advance of a proceeding to allow adequate preparation therefor.
 "(b) Waiver Of Right To Counsel. A defendant may waive his or her right to counsel in writing or on the record, after the court has ascertained that the defendant knowingly, intelligently, and voluntarily desires to forgo that right. At the time of accepting a defendant's waiver of the right to counsel, the court shall inform the defendant that the waiver may be withdrawn and counsel appointed or retained at any stage of the proceedings. When a defendant waives the right to counsel, the court may appoint an attorney to advise the defendant during any stage of the proceedings. Such advisory counsel shall be given notice of all matters of which the defendant is notified."
The appellant did not ask to represent himself. Instead, he asked to be allowed to retain another attorney. When the trial court informed him that the case would proceed to trial that day, with or without Ms. Owings as defense counsel, the appellant indicated that he wanted Ms. Owings to continue to represent him. After the trial court gave the appellant and Ms. Owings an opportunity to discuss how to proceed, Ms. Owings indicated that the appellant was still unhappy with her representation but would accept her as his attorney if necessary. At that point, the trial court dismissed Ms. Owings as the appellant's attorney, to which the appellant responded that he still wanted her to represent him. Over the appellant's objections, the trial proceeded and the appellant was not represented by counsel.
Obviously, the appellant did not make a "clear and unequivocal" waiver of his right to counsel. Rather, the trial court dismissed the appellant's appointed attorney and informed the appellant that he would be representing himself. As we noted in Stanley and Leslie, we recognize the difficult situation the trial court faced. However, in attempting to deal with what appeared to be dilatory tactics by the appellant, the trial court violated one of the appellant's basic constitutional rights. The trial court should have 1) refused to dismiss the appellant's appointed attorney and tried the case that day, 2) continued the case to allow the appellant to retain counsel, 3) appointed another attorney and continued the case, or 4) engaged in a sufficient colloquy to determine whether the appellant wanted to represent himself and, if so, whether he understood all of the implications of self-representation. See Stanley, supra.
Because the appellant did not make a "clear and unequivocal" waiver of his right to counsel at his trial, we must reverse the judgment and remand this case for further proceedings.
REVERSED AND REMANDED.
All judges concur. *Page 242