SHAW, Judge.
Terry Harris pleaded guilty to and was convicted of operating as an unregistered investment-adviser representative, a violation of § 8-6-3(b), Ala.Code 1975. The trial court sentenced Harris to five years’ imprisonment, but suspended the sentence and imposed a five-year term of unsupervised probation. The court also ordered Harris to pay court costs, a $2,500 fine, and $10,000 to the Crime Victims Compensation Fund. The court further ordered Harris to perform 500 hours of community service, to cease trading in securities without proper registration, and to attend a workshop on the requirements for registration with the Alabama Securities Commission. Finally, the court ordered Harris to pay $1,603,680.09 in restitution.
On September 10, 2004, a Montgomery County grand jury indicted Harris in case no. CC-04-1289 on five counts alleging violations of the Alabama Securities Act, §§ 8-6-3(a), -3(b), and -4, Ala.Code 1975. (C. 6-7; Suppl. 4, 7.)[1] Harris had been indicted on March 12, 2004, in case no. CC-04-501 on three counts alleging violations of the Alabama Securities Act, §§ 8-6-3(a), -3(b), and -4, Ala.Code 1975. (Supp2. 10-11.) The State filed a motion to consolidate the cases on January 5, 2005, because, it averred, the charges in the two cases were based on “identical conduct.” (Supp2.139-40.)[2]
*566 Harris had retained counsel, and the parties had filed several motions and responses regarding discovery and pretrial hearings. The proceedings in the two cases had been continued several times pursuant to joint motions or motions from the State. (Supp2. 69, Supp2. 100-01, Supp2. 102-08, Supp2. 107-08.) Trial was set for January 24, 2005.
On January 7, 2005, defense counsel filed a motion for a continuance; the motion referred to both case no. CC-04-501 and case no. CC-04-1289. (Supp2. 142-44.) In the motion, defense counsel alleged:
“1. That the attorneys representing the defendant ] have not had an adequate opportunity to prepare said case for trial.
“2. That the attorneys for the Defendant filed a Motion for Request of Production of Documents and Other Material and The State of Alabama filed a response on July 14, 2004 and some 19 boxes of material to the office of J.L. Chestnut, Jr., which included untranscribed audiotapes.
“3. That J.L. Chestnut, Jr., was under the impression that he was to be contacted by the State of Alabama and that they would arrange a date to review the matters produced by the State. The State was under the impression J.L. Chestnut, Jr. would contact their office. As a result, the meeting has never occurred.
“4. Defendant’s motion to suppress evidence was continued on a motion filed by the State and Defendant has not had an opportunity to present its Motion to Suppress and other motions that need to be ruled upon in order that the Defendant can adequately prepare his defense.
“5. That on December 30, 2004, J.L. Chestnut, Jr. filed a motion for an evidentiary hearing that is pending before the court. Defendant avers that it is necessary to have a ruling on said motions in sufficient time for attorneys representing the Defendant to properly prepare the defense.
“6. That Philip Henry Pitts of Selma, Alabama has recently been associated with the defense but has not had an adequate opportunity to review all the materials furnished by the State of Alabama or an adequate opportunity to confer with either J.L. Chestnut, Jr. or Terry Harris.
“7. That said Defendant has been prevented from making a complete review of the materials and consulting with counsel because of the death of his father, J.D. Harris, Sr., who passed away on December 13, 2004; and since the death of his father, his mother Mrs. Georgia Harris, 78-years-old, has suffered two heart attacks and been hospitalized for a period on and off. Defendant was reindicted during the October 2004 term and the case is set for trial on January 24, 2005. That short period is insufficient to properly prepare for trial.
“8. Defendant is entitled to sufficient time to properly prepare and not be penalized for matters and circumstances beyond his control and not of his making.”
(Supp2.142-43.)
On January 21, 2005, defense counsel filed a motion to withdraw and alleged that on January 19, 2005, Harris had terminated their services. (Supp2. 146-47.) Defense counsel attached copies of the letters *567 Harris had sent them on January 19, 2005, terminating their services.
On January 24, 2005, the parties appeared for trial. The trial court asked Harris about the disagreement between him and defense counsel. (R. 6.) Harris argued to the court that defense counsel did not understand the nature of the case or what his business was about, and stated that he had hired another attorney to represent him. He stated that he had had a conference telephone call with defense counsel and with a securities expert during the previous week, and only then did he conclude that counsel were unprepared and that they did not understand securities law. Harris stated that, before then, defense counsel had not returned his telephone calls. He further stated that he had no confidence in defense counsel and argued that they were “scrambling” because nothing had been done to prepare for trial. (R. 7-8.) The trial judge stated that, to him, the case was very simple, and that defense counsel understood securities cases because they had graduated from law school and were licensed by the State of Alabama. (R. 8.)
The trial court then informed Harris that his attorneys were supposed to be sure that the State met its burden of proof, that a fair jury was selected, that only relevant testimony and exhibits were admitted, and that they would devise a trial strategy for him. The court stated, “As I’ve told you already, the only thing you need to do is just be here, sit at that table out there. You don’t have to utter a word. Everything is on the State.” (R. 10.) Harris replied, “I don’t choose to represent myself, though, your Honor.” (R. 10.)
Harris and the trial judge continued to discuss the matter, as follows:
“THE COURT: Yeah. But you’re going to have to today or you can use their assistance. But we’re going to try this case today, now. I see nothing to convince me that we shouldn’t try this case today.
“MR. HARRIS: Well, I don’t have a — I don’t have an attorney in this case.
“THE COURT: Well, you fired your lawyers a week before trial and I’m not going with that.
“MR. HARRIS: Right now during the court I don’t have an attorney.
“THE COURT: Well, we’ve got two here. You can use them or not use them. That’s up to you. All right. But we’re going to try this case.
“MR. HARRIS: I don’t choose to go pro se. I don’t choose to represent myself.
“THE COURT: Well, but you’re going to have to do something. Well, you can just sit there at the table, then. You don’t have to do anything.
“MR. HARRIS: Shouldn’t I have an attorney representing me before we go to trial?
“THE COURT: Well, you’ve got two, unless I find that—
“MR. HARRIS: They’re not representing me, though.
“THE COURT: — that by your conduct you have waived your right to be represented by counsel. And you’ve done that in this case.
“MR. HARRIS: Well, how did I do that, Your Honor?
“THE COURT: By discharging these lawyers on the eve of trial.
“MR. HARRIS: But I do have an attorney that’s—
“THE COURT: No, sir. He has not made an appearance in this case. I have not seen him. I don’t even know who they are. I don’t know if any lawyers exist by that name. I don’t.
*568 “MR. HARRIS: I can — I can verify it, Your Honor.
“THE COURT: Please.”
(R. 10-11.)
One of Harris’s recently terminated attorneys told the court that an attorney had contacted him about the case and said that he would not be able to appear in court that day. Harris told the court his new attorney’s name and stated that counsel had been unable to appear that day because he had another case set for trial. Harris offered to telephone the attorney, David Gespass, to verify that he was on the case.[3]
The court’s discussion with Harris about his legal representation for the trial continued:
“THE COURT: Well, he can be on the case, but the case is trying today. Now, he can be on it, but we’re going to try this case today.
“MR. HARRIS: I don’t have an attorney, though, that’s here with me.
“THE COURT: Yeah, but that’s your — you got two you—
“MR. HARRIS: They’re not my attorneys.
“THE COURT: Well, but you decided to discharge them.
“MR. HARRIS: But they’re not my attorneys. I just don’t have an attorney here with me to try the case.
“THE COURT: They’re here. They’re going to help.
“MR. HARRIS: All I need — all I’m asking for, Your Honor, is a fair trial so I can have—
“THE COURT: I’m going to give you a fair trial. I’m going to give you the fairest trial I know to give you. I’m real — a stickler about that. I hold the State to its burden, and they know that. That’s one thing they don’t like about me. I hold — I believe in the Constitution, you’re innocent until proven guilty. But that doesn’t have anything to do with us trying this case, now.
“MR. HARRIS: You believe I should be tried without an attorney?
“THE COURT: No, you’re not going to be — you’re going to be tried. You’ve got two here.
“MR. HARRIS: I’m not representing myself, and they’re not representing me.
“THE COURT: But you decide — you don’t — I don’t see — you don’t have a good reason for discharging these attorneys. You really don’t.
“MR. HARRIS: I do, Your Honor. “THE COURT: Well, you should have done it before now.
“MR. HARRIS: I didn’t know that they didn’t understand securities until now.
“THE COURT: Well, they don’t understand your version of it. Okay? Now, this is a very simple case that we’re going to present to the jury today.”
(R. 13-15.)
Harris and the court discussed an expert witness Harris wanted to call as a witness, and about evidence from a civil case Harris wanted to introduce at trial. Harris then stated, “I don’t see how I can have a fair trial, Your Honor, without an attorney.” (R. 19.)
The trial court ordered one of Harris’s former attorneys to remain in court to assist Harris if he chose to ask any questions of counsel. One of the attorneys *569 stated, “[I]t’s very obvious this morning the disdain and the dislike and the lack of confidence Mr. Harris has in our ability,” and the court replied, “Well, that’s all contrived. I don’t find any merit in that.” (R. 21.) Counsel stated, “I don’t think Mr. Harris is going to seek our advice.” (R. 21.) The court told the attorneys that Harris did not have to seek their advice, and that whether he did so was up to him. (R. 22.) The court then asked counsel if they had prepared Harris’s case for trial, and one of the attorneys stated that they were in the process of doing so when Harris fired them. He said that they had reviewed the evidence, researched the law, and prepared an analysis of the case. The trial court then stated:
“I know of no law that says that Mr. Harris can’t fire lawyers that he’s hired, so that’s well within his right. Okay? But I do think that under the circumstances of this case that that was all calculated, all right, to cause this trial not to be had today. And for that reason, all right, I’m going to continue with the trial as scheduled. I find that he’s had able, well-qualified, experienced counsel to assist him in this matter, and he can proceed by himself at his own peril. That’s just my position on it.”
(R. 26-27.)
The case then proceeded to trial. Harris represented himself, although J.L. Chestnut, Jr., remained as standby counsel. Harris made the opening statement and cross-examined the State’s witnesses. The State presented 10 witnesses, including an attorney from Denver, Colorado, who was an expert in securities law and the former director of the North American Securities Administrators Association. Standby counsel occasionally made an objection, and he made a motion to dismiss at the end of the State’s case and presented arguments on the motion.[4] Harris conducted direct examination of defense witnesses. At the conclusion of the defense’s case, standby counsel resubmitted the arguments he made in support of the motion to dismiss at the close of the State’s case. Harris then participated in a lengthy conference on jury charges. (R. 537-89.)
After the charge conference was completed, Harris and the State agreed to enter into a plea agreement. The plea proceeding took place immediately, apparently in front of the jury. (R. 595.) The State agreed to dismiss Counts 1 and 3 in this case and to dismiss securities charges pending in Jefferson County; Harris agreed to plead guilty to Count 5, which alleged transacting business as an investment-advisor representative without being registered. The trial court read that count to Harris and explained the range of punishment for a conviction of that charge; Harris told the court that he understood the charge and the penalty. The following interchange about former defense counsel then occurred:
“THE COURT: ... You’ve discussed this case — I know you discharged Mr. Chestnut as your lawyer, but he’s been serving at the Court’s request as an advisor to you during these proceedings. And as such, I’ve asked him to advise you on your constitutional rights with respect to this plea. Has he done that?
“THE DEFENDANT: Yes, sir.
“THE COURT: All right. Have you told him what you did and what you didn’t do in this case?
“THE DEFENDANT: Yes, sir.
“THE COURT: All right. You’re satisfied with the advice that he’s given you?
*570 “THE DEFENDANT: Yes, sir.”
(R. 597-98.)
The State then presented the factual basis for the plea, and the trial court explained the rights Harris was giving up by pleading guilty. Harris stated that he understood the State’s factual allegations and the court’s explanation of rights, and he entered a guilty plea. Harris stated that he had no issues he wished to reserve for appeal. The trial court asked standby counsel if he was aware of any issues to reserve for appeal and counsel said he was aware of none. The trial court asked Harris to state the facts underlying his plea, and the court asked standby counsel if he recommended that the court accept the plea; standby counsel told the court that he did.
On February 28, 2005, Harris filed a pro se motion to vacate his guilty plea. (C. 18-22.) Harris made numerous allegations in his motion, including that he was forced to represent himself at trial and that his guilty plea, therefore, had been involuntarily entered. (C. 21.)
On April 28, 2005, the trial court held a sentencing hearing. Harris appeared with three attorneys, including an attorney from Georgia who had been allowed to represent Harris in this case. (Supp2. 215.) One attorney moved to withdraw as local counsel, and the other two attorneys informed the court that Harris had terminated them. (SH. 2-3.)[5] When Harris began to tell the trial court that he had terminated the attorneys because they had not been preparing, the trial court interrupted him and stated:
“THE COURT: That’s the same argument you give me for all these lawyers you discharge, now. I’m going to give you my same speech. Okay? You’re discharging these lawyers at your peril. And if you decide to, I’m going to appoint them to represent you this morning and I’m going ahead with sentencing this morning. I want to let you know that. I’m not playing — indulging in your games any longer. You understand?
“MR. HARRIS: No, sir.
“THE COURT: All right. So I’m not going to grant the motion. I haven’t— you — all haven’t filed a motion to withdraw—
“MR. LAWSON [defense counsel]: No, sir.
“MR. DORTCH [defense counsel]: No, sir.
“THE COURT: Okay. Well, you’re here. You gave your notice of appearance. Mr. Harris retained you, did he not?
“MR. DORTCH: Yes, sir.
“THE COURT: Okay. And I believe when we were last in court, you all were aware that we were going to have sentencing today; is that right?
“MR. DORTCH: You did notify us.
“THE COURT: Okay. And when did Mr. Harris indicate to you that he no longer desired your service?
“MR. DORTCH: This morning.
“THE COURT: This morning?
“MR. DORTCH: Yes, sir.
“THE COURT: No prior notice or anything?
“MR. DORTCH: No, sir.
“THE COURT: All right. And didn’t give you a reason?
“MR. DORTCH: No, sir.
*571 “THE COURT: All right. Well, you’re his lawyers this morning.”
(SH. 3-5.) The trial court then sentenced Harris. The court noted that Harris had filed a motion to withdraw his guilty plea. The court denied the motion and stated:
“THE COURT: The plea was knowing, intelligent, it was voluntary, and he was advised of his rights at the time. He had counsel. The Court took great pains to explain his rights to him. As a matter of fact, he participated, because I was of the impression that he was going to plead to one count of the indictment then he selected another count to plead to. So on that basis, I’ll deny the motion.”
(SH. 20-21; emphasis added.)
Harris raises four issues on appeal; however, because of our disposition of this case, we need only address the issue regarding the constitutional right to the assistance of counsel.
In the motion to withdraw the guilty plea, Harris alleged that he was forced to represent himself at trial after he terminated his defense attorneys before trial because they were not prepared. Thus, we have jurisdiction to consider the issue raised on appeal regarding the trial court’s determination that Harris had impliedly waived his right to counsel.
The United States Supreme Court has often discussed the necessity of counsel in criminal cases. In Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the Court stated:
“Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court’s authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court’s jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court’s jurisdiction at the hearing of trial may be lost ‘in the course of the proceedings’ due to failure to complete the court — as the Sixth Amendment requires — by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed.”
304 U.S. at 467-68, 58 S.Ct. 1019 (footnote omitted). Accord Coughlin v. State, 842 So.2d 30, 33 (Ala.Crim.App.2002) (“Thus it is the lack of counsel, coupled with the absence of a knowing and intelligent waiver thereof, that acts to deny the defendant counsel and to jurisdictionally bar his prosecution.”).
In Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Supreme Court stated:
“The assistance of counsel is often a requisite to the very existence of a fair trial. The Court in Powell v. Alabama, [287 U.S. 45, 68-69 (1932)] — a capital case — said:
“ ‘The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or *572 bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.’ ”
407 U.S. at 31, 92 S.Ct. 2006.
In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Court stated:
“When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must ‘knowingly and intelligently’ forgo those relinquished benefits. Johnson v. Zerbst, 304 U.S. [458,] 464-465, 58 S.Ct. [1019,] 1023. Cf. Von Moltke v. Gillies, 332 U.S. 708, 723-724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that ‘he knows what he is doing and his choice is made with eyes open.’ Adams v. United States ex rel. McCann, 317 U.S. [269,] 279, 63 S.Ct. [236,] 242 [ (1942) ].”
422 U.S. at 835, 95 S.Ct. 2525.
Alabama has addressed the right to counsel and the waiver of the right to counsel in Rule 6.1, Ala.R.Crim.P. Rule 6.1(a) provides that “[a] defendant shall be entitled to be represented by counsel in any criminal proceedings held pursuant to these rules ....” Rule 6.1(b) addresses the waiver of the right to counsel and provides, in pertinent part:
“A defendant may waive his or her right to counsel in writing or on the record, after the court has ascertained that the defendant knowingly, intelligently, and voluntarily desires to forgo that right. At the time of accepting a defendant’s waiver of the right to counsel, the court shall inform the defendant that the waiver may be withdrawn and counsel appointed or retained at any stage of the proceedings. When a defendant waives the right to counsel, the court may appoint an attorney to advise the defendant during any stage of the proceedings. Such advisory counsel shall be given notice of all matters of which the defendant is notified.
“If a nonindigent defendant appears without counsel at any proceeding after having been given a reasonable time to retain counsel, the cause shall proceed.”
Rule 6.1(c), Ala.R.Crim.P., provides that “[a] defendant may withdraw a waiver of the right to counsel at any time but will not be entitled to repeat any proceeding previously held or waived solely on the grounds of the subsequent appointment or retention of counsel.” The Committee Comments to that Rule state that “[t]he court is required to inform the defendant that the waiver may be withdrawn since under section (c) the defendant has the burden of requesting counsel if he later decides to withdraw the waiver.” Accord *573 Williams v. State, 958 So.2d 911 (Ala.Crim.App.2006).
Alabama appellate courts have often acknowledged that the United States Supreme Court does not require a specific colloquy between a defendant and a trial court to effectuate a waiver of the right to counsel. For example, in Tomlin v. State, 601 So.2d 124 (Ala.1991), the Alabama Supreme Court stated that it considers the totality of the circumstances to determine whether a defendant’s waiver of counsel was knowing and intelligent and considers factors such as whether the defendant had had previous involvement in criminal trials, whether the defendant had knowledge of possible defenses, and whether standby counsel was appointed to assist the defendant. See also Moody v. State, 888 So.2d 532, 553-66 (Ala.Crim.App.2003) (considering whether the record as a whole demonstrated a knowing and intelligent waiver of counsel); Coughlin v. State, 842 So.2d 30 (Ala.Crim.App.2002) (considering the totality of circumstances, including the defendant’s background and experience).
The Alabama Supreme Court stated that when an appellant has clearly waived his right to counsel and has asserted his right to appear pro se at trial, then argues on appeal that the court denied his right to counsel, the burden is on the appellant to prove that his waiver was not knowing and intelligent. See Tomlin, 601 So.2d at 128. “If the record is not clear as to the defendant’s waiver and request of self-representation, the burden of proof is on the State.” Id., citing Carnley v. Cochran, 369 U.S. 506, 517, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). The State acknowledges that because Harris “did not expressly waive his right to counsel, the burden is on the State to show that he has, in fact, waived his right to counsel knowingly and voluntarily.” (State’s brief at p. 27.)
The trial court in this case stated that Harris had waived his right to counsel by terminating his retained counsel “on the eve of trial.” (R. 11.) We acknowledge that in some cases, courts have found an “implied” waiver of the right to counsel or that the right to counsel had been “forfeited.” In Siniard v. State, 491 So.2d 1062 (Ala.Crim.App.1986), the trial court twice postponed the case so that the appellant could retain counsel but refused to grant a third continuance. The appellant argued on appeal that the trial court erred when it denied the third continuance, but this Court disagreed, stating: “Where a defendant has been given a reasonable amount of time to hire an attorney, but fails to do so, the trial court will not be put in error for refusing to grant him a continuance unless the defendant’s failure to obtain counsel was justified.” 491 So.2d at 1064. This Court held that the appellant had “waived, or rather forfeited, his right to counsel,” and that the trial court did not err in denying the motion for a continuance. 491 So.2d at 1064 (footnote omitted).
In Johnston v. City of Irondale, 671 So.2d 777 (Ala.Crim.App.1995), the nonin-digent appellant argued that he was denied due process because he was not represented by counsel at trial. This Court noted that the case had been set for trial twice and that Johnston had appeared without counsel each time. The judge had postponed the case each time so Johnston could retain counsel. The third time the case was set for trial and Johnston appeared without counsel, the judge proceeded with the trial, and Johnston acted pro se. We quoted Rule 6.1(b), AIa.R.Crim.P., regarding a nonindigent defendant appearing without counsel after having been given a reasonable time to hire counsel, and held that under the circumstances of that case, Johnston was not denied due process.
*574 Finally, in Monte v. State, 690 So.2d 517 (Ala.Crim.App.1996), the trial court continued the case several times when the nonin-digent defendant appeared without an attorney, and again after he requested a continuance to obtain appointed counsel. The defendant did not complete the affidavit of substantial hardship until one day before his trial was scheduled, and the request for indigency status was denied because the defendant was not indigent. Quoting the trial court’s finding that the defendant’s repeated failure to retain counsel when he was given a reasonable time to do so resulted in a waiver of the right to counsel, this Court affirmed the judgment below. 690 So.2d at 519.
However, we have reviewed several cases in which the records disclosed that the defendants who terminated their attorneys were not granted a reasonable time to retain counsel and were not informed of the consequences of self-representation, and we have reversed the convictions in those cases. We discuss this series of cases at some length because they control our decision in the case now before us.
In Warren v. City of Enterprise, 641 So.2d 1312 (Ala.Crim.App.1994), the appellant appeared without counsel for a trial de novo in the circuit court when she appealed following her conviction in the municipal court. She had been represented by appointed counsel in the municipal court. Warren told the court she wanted to have counsel appointed, but the trial court denied the request, and the cause proceeded to trial with Warren appearing pro se. This Court reversed, finding that there had been no express or implied waiver of counsel and that Warren had, in fact, asserted her right to counsel. We also determined that the provision in Rule 6.1(b), Ala.R.Crim.P., regarding proceeding to trial after a defendant was given a reasonable time to obtain counsel, did not apply. We stated:
“We cannot find an ‘implied waiver’ of counsel because there is no evidence that the appellant failed to retain counsel ‘ “after repeated urging by the court or [that the appellant] discharge^] counsel in midtrial after explicit warnings.” ’ Wheeler v. State, 553 So.2d 652, 653 (Ala.Cr.App.1989) (emphasis omitted). There was no showing that the appellant, having the financial ability to retain counsel, ‘forfeited’ her right to counsel by failing to obtain counsel despite the repeated advice of the court to do so. Wheeler, 553 So.2d at 653. ‘ “[WJhere a defendant able to retain counsel has been advised by the court that he must retain counsel by a certain reasonable time, and where there is no showing why he has not retained counsel within that time, the court may treat his failure to provide for his own defense as a waiver of his right to counsel and require such defendant to proceed to trial without an attorney.” ’ Siniard v. State, 491 So.2d 1062, 1064 (Ala.Cr.App.1986).”
Warren, 641 So.2d at 1315-16. Concluding that Warren had been denied her right to counsel, we reversed the conviction.
In Stanley v. State, 703 So.2d 1027 (Ala.Crim.App.1997), the appellant informed the court on the day of trial that he wanted to fire his appointed counsel. The court stated, “ ‘Fine. You’re going to represent yourself and we’re going to try it.’ ” 703 So.2d at 1027. The appellant stated that he wanted the court to appoint another attorney and the court refused, and the appellant represented himself at trial. On appeal, we noted that the State quoted from Tomlin v. State, 601 So.2d 124 (Ala.1991), to support its argument that the appellant had waived his right to counsel. We then stated:
*575 “Unlike the defendant in Tomlin, the appellant did not ask that he be allowed to represent himself. As can be seen from the colloquy between the trial court and the appellant, the appellant’s ‘waiver’ was no waiver at all. The trial court informed the appellant that the appellant would be representing himself. Even after the appellant asked for another attorney to be appointed, the trial court refused and again stated that the appellant would be representing himself.
“We are not unmindful of the trial court’s frustration in this matter. The appellant was attempting to have the trial court appoint yet another attorney to represent him on the eve of the trial. However, the solution was not for the trial court to summarily violate one of the appellant’s basic constitutional rights. The trial court should have (1) refused to dismiss the appellant’s second appointed attorney; (2) appointed another attorney and continued the case; or (3) engaged in a sufficient dialogue to discover if the appellant wished to represent himself and, if so, determined if the appellant understood all the implications of this waiver.
“The appellant did not make a ‘clear and unequivocal’ waiver of his right to be represented by counsel. The trial court’s judgment is reversed and this case remanded.”
Stanley, 703 So.2d at 1029 (footnote omitted).
In Leslie v. State, 703 So.2d 1029 (Ala.Crim.App.1997), appointed counsel moved to withdraw on the day the case was originally set for trial, stating that Leslie was dissatisfied with her representation. The trial court granted the motion to withdraw and continued the case, ordering Leslie to represent himself or to retain an attorney. When the case was again called for trial, Leslie objected to proceeding pro se. The trial court noted that counsel had been appointed and that Leslie had not been satisfied, so the cause proceeded with Leslie representing himself. During voir dire, Leslie told the venire that he did not want to represent himself but that the judge would not appoint another attorney after he had had a conflict with his first appointed attorney. On appeal following his conviction, Leslie contended that he had not voluntarily and knowingly waived his right to counsel. We reversed, relying on Stanley, supra, and stated:
“In Stanley, the appellant informed the court on the day of trial that he wanted to ‘fire’ his second court-appointed attorney. The trial court responded, ‘Fine. You’re going to represent yourself and we’re going to try it.’ This court noted that the colloquy between the court and Stanley made it clear that there was no waiver of counsel, because the court simply had informed the appellant that he would be representing himself, even after he requested another attorney. This court found that Stanley had not made a ‘clear and unequivocal’ waiver of his right to be represented by counsel, and it reversed Stanley’s conviction.
“Based on Stanley and the cases cited therein, we must also reverse Leslie’s conviction. It is equally clear that in this case Leslie made no ‘clear and unequivocal’ waiver of his right to trial counsel. As in Stanley, the trial court here informed Leslie that he would be representing himself. Under the facts of this case, this was a denial of Leslie’s constitutional right to counsel.
“As we noted in Stanley, ‘We are not unmindful of the trial court’s frustration in this matter. The appellant was attempting to have the trial court appoint yet another attorney to represent him, on the eve of the trial. However, the solution was not for the trial court to *576 summarily -violate one of the appellant’s basic constitutional rights.’ Stanley, 703 So.2d at 1029. The trial court should have denied the attorney’s motion to withdraw, appointed a new attorney, and continued the case, or it should [have] determined whether Leslie wished to represent himself and, if so, whether he understood the implications of self-representation.”
Leslie, 703 So.2d at 1031-32.
In Watkins v. State, 708 So.2d 236 (Ala.Crim.App.1997), after veniremembers had been questioned but before a jury was struck, appointed counsel filed a motion to withdraw because Watkins was dissatisfied with her performance. Watkins stated that he wanted to hire an attorney, but the trial court stated that it was not going to continue the case because Watkins was unhappy with counsel’s performance. Watkins told the court that he had been incarcerated until two weeks before trial and that he had only spoken with counsel in the days before trial. The trial court granted counsel’s motion to withdraw but refused to continue the case, so Watkins said, “Tf I can’t have time to get [an attorney], I will take her. I can’t go against [the prosecutor]. He’s been to law school.’ ” 708 So.2d at 238.
We concluded, based on the record before us in Watkins, that a reversal of Watkins’s conviction was required. We stated:
“The appellant did not ask to represent himself. Instead, he asked to be allowed to retain another attorney. When the trial court informed him that the case would proceed to trial that day, with or without Ms. Owings as defense counsel, the appellant indicated that he wanted Ms. Owings to continue to represent him. After the trial court gave the appellant and Ms. Owings an opportunity to discuss how to proceed, Ms. Owings indicated that the appellant was still unhappy with her representation but would accept her as his attorney if necessary. At that point, the trial court dismissed Ms. Owings as the appellant’s attorney, to which the appellant responded that he still wanted her to represent him. Over the appellant’s objections, the trial proceeded and the appellant was not represented by counsel.
“Obviously, the appellant did not make a ‘clear and unequivocal’ waiver of his right to counsel. Rather, the trial court dismissed the appellant’s appointed attorney and informed the appellant that he would be representing himself. As we noted in Stanley [v. State, 703 So.2d 1027 (Ala.Crim.App.1997),] and Leslie [v. State, 703 So.2d 1029 (Ala.Crim.App.1997) ], we recognize the difficult situation the trial court faced. However, in attempting to deal with what appeared to be dilatory tactics by the appellant, the trial court violated one of the appellant’s basic constitutional rights. The trial court should have 1) refused to dismiss the appellant’s appointed attorney and tried the case that day, 2) continued the case to allow the appellant to retain counsel, 3) appointed another attorney and continued the case, or 4) engaged in a sufficient colloquy to. determine whether the appellant wanted to represent himself and, if so, whether he understood all of the implications of self-representation. See Stanley, supra.
“Because the appellant did not make a ‘clear and unequivocal’ waiver of his right to counsel at his trial, we must reverse the judgment and remand this case for further proceedings.”
Watkins, 708 So.2d at 241.
Finally, in Cobble v. State, 710 So.2d 539 (Ala.Crim.App.1998), appointed counsel appeared with Cobble in court for a settle *577 ment docket and moved to withdraw based on Cobble’s dissatisfaction with her performance. The trial court permitted counsel to withdraw, but found that Cobble had deliberately created conflicts with counsel and that he had, therefore, effectively waived his right to counsel. The trial court ordered counsel to remain on the case as standby counsel, and it denied Cobble’s request for another appointed attorney. The court stated that it would reconsider its ruling if Cobble requested it to do so. Approximately two weeks later, on the day of trial, Cobble requested a continuance so that he could retain counsel. The trial court denied the request, finding that Cobble had failed to provide a reason for his delay in retaining counsel and that he was intentionally trying to delay the case. The trial court explained standby counsel’s role to Cobble. Following the trial court’s explanation, Cobble informed the court that he wanted to change his plea. With standby counsel present, Cobble pleaded guilty and was convicted.
On appeal, Cobble argued that he was denied his constitutional right to counsel and that the trial court had erred when it determined that he had knowingly waived his right to counsel. Finding that Cobble had not expressly or impliedly waived his right to counsel, we reversed. We stated:
“In the instant case, the record does not show that the appellant made a ‘clear and unequivocal’ waiver of his right to counsel. In fact, the record reveals that the trial court informed the appellant that he would be representing himself, even after the appellant asked the trial court to appoint another attorney to represent him. The appellant never expressed a desire to represent himself at trial.
“ ‘ “A valid waiver of counsel need not be express. However, courts are hesitant to validate an implied waiver. Nevertheless, a court may infer a knowing and intelligent waiver if the defendant fails to retain counsel after repeated urging by the court or discharges counsel in midtrial after explicit warnings.” ’ Wheeler v. State, 553 So.2d 652, 653 (Ala.Cr.App.1989), quoting Project: Criminal Procedure, 76 Geo.L.J. 921, 928-30 (1988) (emphasis omitted). Here, however, not only was there no express waiver of the right to counsel by the appellant, but there was no implied waiver of that right. The record does not establish that the appellant was repeatedly urged by the trial court to obtain other counsel; nor does the record indicate that the appellant discharged his counsel in the middle of the proceedings after explicit warnings from the trial court.
“Approximately two weeks before trial, when the appellant expressed his dissatisfaction with his trial counsel, the trial court permitted counsel to withdraw, even after finding that the appellant’s complaints about his attorney were unfounded and unsubstantiated. Furthermore, on the day of trial, the trial court again informed the appellant, who had requested a continuance to retain counsel, that he would be representing himself at trial. The trial court found that the appellant had ‘given no justifiable cause or reason for his failure to retain an attorney in this case.’ (C. 6.) However, the trial court had previously found, before appointing [defense counsel] to represent the appellant, that the appellant was ‘partially indigent.’ After the appellant pleaded guilty, the court found that the appellant was indigent and appointed appellate counsel to represent him in further proceedings. This finding of indigence was based on essentially the same information the trial court had before it when determining *578 that the appellant was ‘partially indigent’ for trial purposes. See Warren v. City of Enterprise, 641 So.2d 1312, 1316 (Ala.Cr.App.1994). Thus, because the trial court found that the appellant was indigent and because the record does not dispute that finding, it was unrealistic for the trial court to believe that the appellant could have retained trial counsel.
“Although we do not necessarily disagree with the trial court’s findings that the appellant was engaging in dilatory tactics by making unwarranted accusations against his trial counsel, we cannot uphold the trial court’s peremptory ruling that the appellant, as a result of these actions, knowingly waived his right to trial counsel. In Leslie v. State, 703 So.2d 1029 (Ala.Cr.App.1997); Stanley [v. State], supra, 703 So.2d [1027,] 1028 [ (Ala.Crim.App.1997) ]; and Watkins v. State, 708 So.2d 236 (Ala.Cr.App.1997), three cases recently decided by this court which were factually similar to the instant case, we held that the trial court, instead of requiring the defendant to represent himself at trial, should have done one of the following: (1) denied the attorney’s motion to withdraw; (2) appointed a new attorney to represent the defendant at trial; (3) granted the defendant’s request for a continuance to allow him to retain counsel; or (4) determined whether the defendant wanted to represent himself and, if so, engaged the defendant in a colloquy to determine whether he understood all of the implications involved in self-representation. Any of the above actions would have been appropriate here; requiring the appellant to represent himself was not.
“ ‘ “The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused— whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.” ’
“Teske v. State, 507 So.2d 569, 570 (Ala.Cr.App.1987), quoting Johnson v. Zerbst, 304 U.S. 458, 464-65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (emphasis added in Teske).
“By this opinion, we do not want to tie the hands of trial judges dealing with defendants who are attempting to delay a disposition of their cases; nor do we intend to imply that a trial court must appoint new counsel every time a defendant expresses dissatisfaction with his representation....
“However, under the facts of this case, we must conclude that the trial court erred in finding that the appellant knowingly waived his right to trial counsel.”
Cobble, 710 So.2d at 541-42.
Although Harris was not indigent, we find that the foregoing cases in which this Court determined that the defendants had been denied their right to counsel compel us to reverse Harris’s conviction. As in each of those cases, the record here demonstrates that Harris never expressed a desire to represent himself. To the contrary, Harris repeatedly informed the court that he did not want to appear pro se and that he wanted his newly retained counsel to represent him. Furthermore, just as we found in Cobble, the record does not establish that Harris appeared for trial *579 without counsel after he was repeatedly urged by the trial court to retain counsel. To the contrary, the record before us reflects that, as soon as Harris learned that defense counsel had filed for a continuance stating that they were not prepared for trial, and as soon as he had concluded that they did not adequately understand the nature of the case against him, he terminated their services and retained another attorney. The trial had not been continued previously due to any delay tactics on Harris’s part; in fact, the record reflects that the case had been continued, but only on motions of the State or joint motions from both parties, because of, in part, the extensive discovery in the case. The only defense motion seeking a continuance was the one filed by Chestnut and Pitts approximately two weeks before trial, in which they alleged they had not had time to review the evidence or to prepare for trial. The facts on the record before us permit no finding of an implied waiver of counsel caused by any failure on Harris’s part to retain counsel after having been given a reasonable time to do so. Rule 6.1(b), Ala. R.Crim.P. Rather, it appears that upon learning that his retained attorneys were not prepared and upon concluding that they did not understand the case, Harris acted promptly to retain the services of another attorney, who certainly would have been entitled to obtain the voluminous evidence and to prepare his client’s case for trial.[6] Therefore, we find that the State of Alabama failed to sustain its burden of proving that Harris had impliedly waived his constitutional right to counsel.
Finally, even if we agreed with the trial court that Harris was deliberately attempting to delay the trial by making unwarranted accusations regarding defense counsel, we would still be compelled to reverse the conviction here because the trial court made no effort to advise Harris of the pitfalls associated with self-representation. See, e.g., Williams v. State, 958 So.2d 911 (Ala.Crim.App.2006) (“Even if we were to hold that the appellant impliedly waived his right to counsel when he fired his attorney during a recess in the proceedings, the record in this case does not indicate that the trial court ever advised the appellant about the dangers and disadvantages of self-representation .... ”). In Johnson v. State, 716 So.2d 745 (Ala.Crim.App.1997), the appellant fired his appointed attorney immediately before the trial was scheduled to begin and the trial court told the appellant he would be representing himself. When Johnson told the court he was going to ask his parents to retain an attorney for him, the trial court stated that the case was going to be tried that day, and Johnson could use his appointed attorney or he could appear pro se. Johnson considered entering a guilty plea, and the trial court conducted a full guilty-plea colloquy, but when Johnson hesitated to enter a guilty plea, the trial court informed him that if he did not plead guilty, he would go to trial. Johnson then said, “ ‘Give me a trial. I’ll just take a trial. I’m going to try it.’ ” 716 So.2d at 747. Johnson’s appointed counsel was present as standby counsel but apparently did not participate actively in the trial after jury selection was conducted, so Johnson acted pro se during the trial. *580 Johnson argued on appeal that he was denied his right to counsel. We noted: “The record does not reflect that the trial judge, appointed counsel, or anyone else discussed with the appellant at any time the consequences of representing himself during the trial.” 716 So.2d at 747.
We determined that Johnson had not waived his right to counsel, and stated:
“Harding [v. Davis, 878 F.2d 1341 (11th Cir.1989),] indicates that, even when an indigent defendant terminates the services of his court-appointed attorney the minute before trial, the trial judge must ensure that the defendant truly desires to represent himself or herself and understands the consequences of such a decision. The right to the assistance of counsel is so fundamental that the trial court must ensure that the defendant who wishes to proceed pro se knows what he or she is doing and is proceeding pro se voluntarily.”
Johnson, 716 So.2d at 750.
We find the discussion and analysis in Johnson applicable here. Most significantly, we note that the trial court never engaged in any kind of colloquy or discussion with Harris to inform him of the “dangers and disadvantages” of proceeding ■without counsel so that the record reflected that he proceeded pro se “with eyes open.” Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The trial court simply told Harris that he did not have valid reasons for discharging his attorneys and that he should have terminated their services earlier than he did. After deciding that Harris’s termination of his retained attorneys constituted an implied waiver of his right to counsel and that the case would proceed to trial that day, the court mentioned looking at the jury panels. When Harris stated that he did not understand what a panel was, the court stated:
“Well, I mean, that’s why, you know, if you had to have brain surgery and they told you you had to — you know, you need to close off the carotid artery or something like that, you know, and you didn’t know what it was then, you know, just mess yourself up. See, that’s why you need experts, legal experts.”
(R. 20.) Immediately before the trial court began jury selection, the court again stated that it had determined that Harris had fired his attorney's so as to cause a delay in the case, that the trial would continue as scheduled, and that Harris could “proceed by himself at his own peril.” (R. 27.)
Under no reasonable interpretation of the record can the statements quoted above, or any other part of the discussion the court had with Harris before the trial began, be considered an adequate discussion of the consequences of proceeding without the assistance of counsel as required by Faretta and by Alabama law. Statements regarding proceeding at his own peril and that legal experts were needed at trial much like medical experts were needed in brain surgery did not serve to inform Harris of the dangers and disadvantages of self-representation so as to establish a knowing and voluntary waiver of the right to counsel. In another case involving an issue whether a defendant had knowingly waived his right to counsel, the Alabama Supreme Court held that “[t]he trial judge’s admonitions to Shelton to the effect that he needed a lawyer are a far cry from explanations of the right to counsel or offers of appointed counsel if Shelton could not afford to retain counsel. Therefore, we cannot say that Shelton intelligently and understandingly waived his right to counsel.” Ex parte Shelton, 851 So.2d 96, 101-02 (Ala.2000). Likewise, the trial court’s admonitions to Harris here did not adequately inform Harris of the dan *581 gers and pitfalls of appearing without counsel, even if he had impliedly waived his right to counsel.
The State contends that, by the time Harris entered his guilty plea, Harris and standby counsel had “ultimately ac-hiev[ed] a form of ‘hybrid’ representation in which his rights were well-protected beyond constitutional requirements.” (State’s brief at p. 27.) Not only do we disagree with the State’s characterization of the relationship between Harris and standby counsel, but we find that, even if the relationship had so evolved, it would not support an affirmance. We note, first, that at the outset of the guilty-plea colloquy, the trial court stated, “I know you discharged Mr. Chestnut as your lawyer, but he’s been serving at the Court’s request as an advisor to you during these proceedings.” (R. 597.) That Harris had terminated counsel and that counsel remained only as an advisor to Harris and only at the court’s behest was apparent from the record. Second, we note that, in its response to Harris’s motion to withdraw the guilty plea, the State alleged, “Although he appeared pro se, the Court appointed renowned criminal defense lawyer J.L. Chestnut, Jr. as his advisor.” (C. 63-64.) The State’s assertion that Harris had the benefit of hybrid representation that somehow cured the denial of Harris’s right to counsel is newly raised and unpersuasive. The assistance of standby counsel is a relevant factor only after a defendant has waived his right to the assistance of counsel and, as discussed above, Harris did not expressly or impliedly waive his right to the assistance of counsel. Therefore, standby counsel’s assistance at the guilty-plea proceeding did not serve to correct the prior Sixth Amendment violation that resulted following the trial court’s denial of Harris’s right to counsel.
For all of the foregoing reasons, we hold that Harris was denied his constitutional right to counsel at all critical stages of the trial proceedings leading up to and including the entry of his guilty plea. Harris did not expressly or impliedly waive his right to the assistance of counsel and he was not advised of the dangers and disadvantages of appearing pro se. Therefore, the judgment of the trial court is reversed and this cause remanded for a new trial.
REVERSED AND REMANDED.
McMILLAN, WISE, and WELCH, JJ., concur.
BASCHAB, P.J., concurs in the result, with opinion.

. This record contains two supplemental records. Pages in the supplemental record filed on December 6, 2005, are designated “Suppl. -." Pages in the supplemental record filed on February 7, 2006, are designated “Supp2.

. The trial court did not specifically rule on the State's motion, but the transcript of the trial reflects that case no. CC-04-501 and case no. CC-04-1289 were not consolidated. However, the record in case no. CC-04-501 has been included in this appellate record, pursuant to the State's motion to supplement, which the trial court granted.

. The record contains a copy of a document styled "Employment Contract’’ that indicates that, on January 19, 2005, Harris retained attorney David Gespass to represent him in case no. CC-04-1289 and in case no. CC-04-501. (Supp2. 161.)

. The State moved to nolle pros Counts 2 and 4, and the trial court granted the motion.

. The pages of the sentencing hearing are numbered separately. Pages of the transcript of this hearing are cited as “SH.-

. Although the trial court repeatedly stated that the case was “very simple” (R. 8, 15), we note that, in its case-in-chief, the State presented the testimony of an out-of-state expert in securities law who had previously served as the director of the North American Securities Administrators Association. We note, too, that the fines and restitution ordered in this case were extensive. Thus, we do not agree that the case was, relatively speaking, a "very simple” one.