C.W. Tomlin was convicted of rape and sodomy. The Court of Criminal Appeals reversed the conviction and remanded the case for a new trial. Tomlin v. State, 601 So.2d 120 (Ala.Cr.App. 1989). We reverse.
The sole issue on this certiorari review is whether Tomlin knowingly and intelligently waived his right to counsel.
Tomlin was indicted for rape and sodomy, both in the first degree. The victim was his six-year-old daughter. He appeared at arraignment on September 10, 1987, without an attorney. He stated that he was familiar with the charges against him, waived the reading of the indictment, and entered a not guilty plea for each offense.
At the arraignment, the court set the trial date for October 26, 1987. Tomlin notified the court that he would retain his own counsel. Tomlin was then ordered to appear on October 23, 1987, with counsel for a plea docket and was to have his counsel notify the court before October 1, 1987, that they were to represent Tomlin. Tomlin was also told that if counsel had not been retained, then he was to appear before the court on October 1, 1987.
Tomlin failed to appear, and a writ of arrest was issued. An attorney filed a notice of appearance of counsel on October 9, 1987, and the writ of arrest was set aside. The attorney filed a motion for a continuance on the grounds that he had not had sufficient time to prepare for trial. The motion was granted. The employed *Page 126 
attorney and Tomlin appeared before the court on February 19, 1988, and the trial was rescheduled for April 4, 1988.
On March 22, 1988, the attorney filed a motion for leave to withdraw as Tomlin's counsel, stating in his motion that Tomlin had failed to aid him in preparing a defense and that Tomlin "persists in conduct which renders it unreasonably difficult for me to carry out my employment effectively." The attorney also stated that Tomlin insisted on "engaging in other conduct that is contrary to my advice, though it is in a matter not pending before this court" and that Tomlin indicated that he was not interested in being represented and had ignored requests to meet with the attorney. The attorney noted that Tomlin had failed to pay his fees and indicated that he was incapable of doing so.
The attorney notified Tomlin of his pending withdrawal and informed him that the trial was scheduled for April 4, 1988. The court denied the motion for withdrawal and ordered counsel to appear in court on April 1, 1988, for a plea docket and on April 4, 1988, for trial.
On March 30, 1988, Tomlin sent a letter to the court releasing his attorney from service and aserting the right to represent himself. In the letter, Tomlin stated as follows:
 "If it please the court or Hair Lips [sic] Hell, I have the Right to represent myself in a court of Law, I claim that Right this day. I release [the attorney] as my attorney as he lacks the necessary Boldness to do the Job that I desire. I am capable of Defending myself and also capable of prosecuting DHR Their attorney on class A, B, C felonies, Falising [sic] court records and Interfaering [sic] with Court ordered custody of a child."
Tomlin appeared for the April 1, 1988, plea docket and demanded that he be allowed to represent himself. The court dismissed Tomlin's attorney. Due to the complexity of the case, the trial judge appointed another attorney to assist Tomlin at trial. The following colloquy occurred at the April 1, 1988, plea docket:
 "THE COURT: There is going to be a problem with representing yourself. The first thing, I don't think that you are competent to represent yourself on the charges for which you stand before this Court. I am not sure that you are familiar with the rules of procedure that are required to be followed in this case.
 "THE DEFENDANT: I represented the UAW for three years and prosecuted and never lost a case.
 "THE COURT: Maybe you will be that lucky in this case.
 "THE DEFENDANT: I feel I have evidence; they have none. I am competent to represent myself. I have the right to and I demand that right. It is nothing you have to decide on it. It has already been established. I have that right.
 "THE COURT: Mr. Brown, I am going to let this man represent himself, since he has said that he demands that right, which under the Constitution he has a right to do, however, I am going to appoint you —
 "MR. BROWN: I am the guardian ad litem for these children.
 "THE COURT: Mr. Weathington, do you have a conflict in this? I am going to have some lawyer . . . to sit in the case with him.
 "MR. WEATHINGTON: I wish you would appoint someone with more experience in this case.
 "THE COURT: I am looking around and trying to find somebody. You have about as much experience as anybody. [To the defendant:] I take it you don't want Mr. Christ [Tomlin's retained attorney] to represent you?
"THE DEFENDANT: No, sir.
"THE COURT: Get that on the record.
"MR. CHRIST: Please.
 "THE DEFENDANT: If you ever read your Bible what it says.
"THE COURT: Let's not get into that right now.
"THE DEFENDANT: Let's do. *Page 127 
 "THE COURT: You are not going to do it right now. I hope that you are familiar with the laws of contempt of court. I certainly will not have any hesitation of imposing it if you don't act with the proper decorum required to be recognized by any lawyer before me. If you are going to represent yourself, you will act like a gentleman and a lawyer.
"THE DEFENDANT: I am.
 "THE COURT: Let's see if you are and we won't have any problems.
"THE DEFENDANT: Fine.
 "THE COURT: Mr. Fambrough, do you have any conflict in this case?
 "MR. FAMBROUGH: Your Honor, I have a real heavy schedule. [In one] of my cases I have asked for a continuance because of my schedule. I have three cases on this docket.
 "THE COURT: This will be the first case to go out Monday morning. I am going to appoint you to sit in the case and monitor the proceedings that go on. Any advice that you think that the defendant needs in conducting his own defense, I expect you to give him if he will let you. I think under the circumstances the Court feels like probably there should be some counsel to sit in with the defendant.
"MR. FAMBROUGH: All right.
 "THE COURT: I am not going to require you to do anything, except if you think that something needs to be done, suggestions to him. If he doesn't want to take your advice, we will put it on the record.
 "MR. FAMBROUGH: What opportunity would I have to explain this to the jury?
 "THE COURT: I don't know. We will cross that bridge when we get to it.
 "MR. FAMBROUGH: Mr. Tomlin, do you understand the procedure on striking the jury.
"THE DEFENDANT: Sure. I want all men.
 "THE COURT: That will be one of the things that you sit in and advise him about. Of course, I will monitor the case carefully to see that we don't get too far —
"MR. FAMBROUGH: Will this be the first case?
"THE COURT: Yes.
 "MR. DAVIS: [The District Attorney] Our first case?
"MR. FAMBROUGH: I am not prepared to try the case.
 "THE COURT: Mr. Fambrough, at this time, I think it won't make any difference under the circumstances whether I appoint somebody today or Monday morning, but I think maybe it would be advisable to appoint somebody today to be at least available.
 "MR. FAMBROUGH: I would need to have a conference with him to explain some things. What he just said about the jury indicates to me he might not understand how to do it. I need some time to explain a few things to him about procedure.
 "THE COURT: Well, that will be one of the things I want you to do throughout the trial in order to give him advice. If he doesn't want to take it, we will put in on the record.
"MR. CHRIST: Your Honor, —
"THE COURT: I am going to relieve you
"MR. CHRIST: Thank you."
We note that the Court of Criminal Appeals did not have before it the record of the April 1, 1988, proceeding when it rendered its judgment of reversal.
The jury found Tomlin guilty of rape and sodomy.
From the record of the sentencing hearing, we can infer that the court offered to appoint a lawyer for Tomlin when the case was initially brought before the court on September 10, 1987. Instead, Tomlin hired his own lawyer.
The following colloquy occurred at the sentencing hearing:
 "THE COURT: If you were not prepared, that's your fault.
"MR. TOMLIN: I'm aware of that.
 "THE COURT: This Court offered to appoint you a lawyer back when the case first came up. You hired a lawyer, *Page 128 
and your lawyer got it continued the first time.
"MR. TOMLIN: I'm aware of that.
 "THE COURT: You were ordered to come before the Court with your lawyer on another occasion, and you didn't show up, and an alias writ of arrest was issued for you. Then when you did get a lawyer, this Court continued the case to give him an opportunity to prepare for the case, and you fired that lawyer and asked to represent yourself. Of course, as a matter of extraordinary precaution, this Court appointed you a qualified lawyer to assist you in the trial of this case. That was the decision made by you, and you amply stated at the time that you made it that you had a constitutional right to represent yourself.
"MR. TOMLIN: Exactly."
In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525,45 L.Ed.2d 562 (1975), the Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case. In order to conduct his own defense, the defendant must "knowingly" and "intelligently" waive his right to counsel, because in representing himself he is relinquishing many of the benefits associated with the right to counsel. Faretta,422 U.S. at 835, 95 S.Ct. at 2541. The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " Faretta,422 U.S. at 836, 95 S.Ct. at 2541 (other citations omitted).
The burden of proof in the present case is on the defendant. When a defendant has clearly chosen to relinquish his right to counsel and has asserted his right to self-representation, and on appeal asserts that he was denied the right to counsel, he has the burden of showing, " 'by a preponderance of the evidence, that he did not intelligently and understandingly waive his right to counsel.' " Teske v. State, 507 So.2d 569,571 (Ala.Cr.App. 1987), quoting Moore v. Michigan,355 U.S. 155, 161-62, 78 S.Ct. 191, 195, 2 L.Ed.2d 167 (1957). The Supreme Court in Carnley v. Cochran, 369 U.S. 506, 516-17,82 S.Ct. 884, 890-91, 8 L.Ed.2d 70 (1962), held that when the record clearly shows that a defendant has expressly waived his right to counsel, the burden of proving that his waiver was not made knowingly and intelligently is on the defendant. "A waiver of counsel can only be effectuated when the defendant asserts a 'clear and unequivocal' right to self-representation."Westmoreland v. City of Hartselle, 500 So.2d 1327, 1328
(Ala.Cr.App. 1986), citing Faretta, 422 U.S. 806,95 S.Ct. 2525. If the record is not clear as to the defendant's waiver and request of self-representation, the burden of proof is on the State. Carnley, 369 U.S. at 517, 82 S.Ct. at 890-91. Presuming a waiver from a silent record is impermissible.Carnley.
Here, the record reflects that the court offered to appoint counsel for Tomlin. The case action summary sheet states that on September 10, 1987, Tomlin notified the court that he would retain his own counsel. In a letter to the court, Tomlin expressly requested that the attorney he had retained be released. Also, in the letter, Tomlin asserted his right to self-representation. On April 1, 1988, at the plea docket Tomlin again asserted the right to represent himself. Because Tomlin clearly asserted the right to self-representation and waived the right to counsel, he must prove that his waiver was not made knowingly and intelligently.
Although the Supreme Court in Faretta states that a defendant should be made aware of the dangers and disadvantages of self-representation, the Supreme Court does not require a specific colloquy between the trial judge and the defendant. "The case law reflects that, while a waiver hearing expressly addressing the disadvantage of a pro se defense is much to be preferred, it is not absolutely necessary. The ultimate test is not the trial court's express advice but rather the defendant's understanding." Fitzpatrick v. Wainwright, 800 F.2d 1057 (11th Cir. 1986) (citations omitted). In each case the court needs to look to the particular facts and *Page 129 
circumstances involved, "including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458,464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1988).
This court looks to a totality of the circumstances involved in determining whether the defendant knowingly and intelligently waived his right to counsel. Jenkins v. State,482 So.2d 1315 (Ala.Cr.App. 1985); King v. State, 55 Ala. App. 306, 314 So.2d 908 (Ala.Cr.App. 1975), cert. denied; Ex parteKing, 294 Ala. 762, 314 So.2d 912 (1975).
The Court of Criminal Appeals looked to factors set out inFitzpatrick, 800 F.2d 1057, to determine if the waiver in this case was made knowingly and intelligently. Although the Court of Criminal Appeals found Tomlin's waiver invalid, we realize that the entire record was not before that court. That court relied upon the following factors:
 "(1) whether the colloquy between the court and the defendant consisted merely of pro forma answers to pro forma questions, United States v. Gillings, 568 F.2d 1307, 1309 (9th Cir.), cert. denied, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760
(1978); (2) whether the defendant understood that he would be required to comply with the rules of procedure at trial, Faretta [v. California, 422 U.S.] at 835-36, 95 S.Ct. at 2541-42; Maynard v. Meachum, 545 F.2d 273, 279 (1st Cir. 1979); (3) whether the defendant had had previous involvement in criminal trials, United States v. Hafen, 726 F.2d 21, 25 (1st Cir.), cert. denied, 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984); (4) whether the defendant had knowledge of possible defenses that he might raise, Maynard, supra; (5) whether the defendant was represented by counsel before trial, Hafen, supra; and (6) whether 'stand-by counsel' was appointed to assist the defendant with his pro se defense, see Faretta, supra, at 834 n. 46, 95 S.Ct. at 2540-41 n. 46; Hance v. Zant, 696 F.2d 940, 950 n. 6 (11th Cir.), cert. denied, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983), overruled on other grounds, Brooks v. Kemp, 762 F.2d 1383 (11th Cir. 1985)."
601 So.2d 120.
Upon a review of the record as a whole, we note that the conversation between the judge and Tomlin consisted of more than pro forma questions and pro forma answers. Tomlin was offered the opportunity to have counsel appointed and refused it. Tomlin retained his own counsel but failed to aid counsel in preparing for the case. Tomlin released his retained attorney. The trial judge stated to Tomlin that it would be difficult for Tomlin to represent himself. The judge notified Tomlin that he must comply with the rules of procedure. Tomlin clearly invoked his right to self-representation. Out of an abundance of caution, the court did appoint counsel to assist Tomlin at the trial. We find that the record, taken as a whole, reveals that Tomlin "knowingly and intelligently" waived his right to counsel.
 "[The problem of self-representation] will always exist for the trial judge when a defendant asserts the right to try his own case. If granted, upon reflection, the defendant most likely would attack his conviction, claiming he did not understand what he was doing or that the court should have given him counsel. On the other hand, if the request is denied, then he could complain a constitutional right had been withheld. Courts should not be manipulated in this manner."
King v. State, 55 Ala. App. at 309, 314 So.2d at 911.
We reverse and remand for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur. *Page 130