The appellant, Marvin Ardis III, was convicted of the unlawful possession of marijuana in the first degree, a violation § 13A-12-213, Ala. Code 1975. He was sentenced to four years' imprisonment for his conviction.
On appeal, Ardis, who was not represented by counsel at trial, contends that he was denied his constitutional right to counsel because, he says, he did not knowingly and intelligently waive his right to trial counsel. Because we conclude that Ardis neither expressly nor impliedly waived his right to be represented by counsel at trial, we reverse the judgment of the trial court.
The case action summary sheet shows that on April 23, 1999, Ardis appeared in court for arraignment, without counsel, and informed Judge Lawson Little that he wanted to waive his right to an attorney. Ardis was formally arraigned that same day, and he entered a plea of not guilty to the charges against him. The record shows that from April 1999 to February 2000, Ardis represented himself, filing numerous pro se motions, which included a motion for Judge Little to recuse himself from hearing the case — a motion that Judge Little, in fact, granted. Upon Judge Little's recusal, Ardis's case was reassigned to Judge Denny Holloway. Ardis filed a pro se motion asking Judge Holloway to recuse himself on the ground that Ardis had earlier filed a complaint against Judge Holloway alleging that the judge was biased against him because of a complaint Ardis had filed against Judge Holloway with the Alabama Judicial Inquiry Committee. Judge Holloway denied the motion. *Page 438 
On the morning of February 16, 2000, the day of his trial, Ardis, who had earlier been granted indigency status by the trial court, requested that an attorney be appointed to represent him. Judge Holloway appointed the Honorable John Byrd to represent Ardis at trial. After Judge Holloway had appointed Mr. Byrd, but on the same day as the appointment, February 16, 2000, the following proceedings occurred in court:
 "The Court: I appointed you, [Mr. Byrd], this morning since [Ardis] indicated this morning he now wanted an attorney to represent him.
 "Mr. Byrd: That's correct, your Honor, and I will let [Ardis] speak for himself. But, I do know that I can say that he's indicated to me that he's not thought that I would be able to serve him in this capacity. I've indicated that he has a few options. I've told him — made sure that he understood the range of his sentence. I asked him about the possibility of speaking with the district attorney.
 "I asked the defendant to allow me to review his case with him. We discussed briefly the suppression motion and the subject of that suppression motion. We discussed the civil case that he had pending and some of the problems that he had with some of the judges. I personally can understand why he might be a little bit paranoid about that. I don't know that there's any basis in fact for it. But I do know that it truly bothers him. I know that he has filed for a continuance and he has claimed to have grounds to ask for the suppression of that evidence. And I know that I asked to see the police report and he didn't want to show me the police report.
 "As a result of that — put it this way: He didn't show me the police report. And as a result of that I'm unable to adequately prepare a defense for him. He indicated to me when I asked him — and I'm not going to beat around the bush — I said, `Give me the damn police report.' Excuse my language, Your Honor. That made him angry and he indicated that at that point in time he didn't think that I would represent his best interests. I told him that was fine and dandy. We would go into court and I would make that known to the Court and let him make application for another attorney or go pro se. And here we are.
 "The Court: All right. Do you want to add anything to that [Ardis]?
 "[Ardis]: Well, the attorney, he used profanity towards me, told me that I needed to go — he didn't see any way for me to beat this case, and said, with you having the frustration that you have against me, that it would be in my best interest for me to go on and plead out to something. And he told me that that was the best thing for me to do. And I told him, I said, I didn't want to do that.
 "Mr. Byrd: Your Honor, I would like to go on record saying that there is not a word of what he just said that was true.
 "The Court: Okay. I will allow you to withdraw, Mr. Byrd. Thank you for your service to the Court.
"Mr. Byrd: Thank you, Your Honor. Good luck, Mr. Ardis.
 "The Court: All right. Have a seat. We're going to get a jury down here and try Mr. Ardis."
(R. 6-9.)
The trial court, after a brief recess, then proceeded to begin the voir dire examination of the venire. After the court and the State questioned the prospective jurors, Judge Holloway asked Ardis if he wanted to ask the jurors any questions, to which Ardis responded that he did not know what kind of questions to ask and that he did not know what to say. In response, the trial court simply said, "How many *Page 439 
[jurors] have we got?" The court then proceeded to briefly explain the striking procedure to Ardis. (R. 13-14.) The record shows that after a short recess, before the striking of the jury, several prospective jurors came to the trial court with concerns about their service as jurors. Some informed the trial court that they or members of their family had been convicted of a crime, although they had remained silent when questions concerning such matters were posed during voir dire. Another prospective juror told the trial court that he "ha[d] always heard that only a fool would represent himself." (R. 17.) Although this juror said that he "guessed" he could give Ardis a fair trial based on the evidence presented, the record does not indicate whether this juror served on the jury or whether he was removed by Ardis with a peremptory strike.
Shortly before the actual striking of the jury, Ardis asked the trial court, "You are not going to give me a lawyer?" The trial court responded, "No, you — let the record show he had a lawyer and fired his lawyer." (R. 18.) When asked by the trial court whether he wanted to make an opening statement to the jury, Ardis told the court that he did not know how to make a statement. Ardis did cross-examine the State's witnesses, and he did make a closing argument to the jury (although it is not part of the record on appeal). Ardis did not testify at trial.
In Cobble v. State, 710 So.2d 539 (Ala.Crim.App. 1998), we said:
 "The right to counsel, like all constitutional rights, may be waived by a defendant if the waiver is knowing, intelligent, and voluntary. See Monte v. State, 690 So.2d 516, 516 (Ala.Cr.App. 1996); see also Rule 6.1(b), Ala.R.Crim.P.
 "`In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case. In order to conduct his own defense, the defendant must "knowingly" and "intelligently" waive his right to counsel, because in representing himself he is relinquishing many of the benefits associated with the right to counsel. Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.'" Faretta, 422 U.S. at 836, 95 S.Ct. at 2541 (other citations omitted).'
 "Tomlin v. State, 601 So.2d 124, 128 (Ala. 1991). `"The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).' Browning v. State, 607 So.2d 339, 343 (Ala.Cr.App. 1992).
 "`"A waiver of counsel can only be `effectuated when the defendant asserts a clear and unequivocal' right to self-representation." Westmoreland v. City of Hartsell, 500 So.2d 1327, 1328 (Ala.Cr.App. 1986), citing Faretta, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. If the record is not clear as to the defendant's waiver and request of self-representation, the burden of proof is on the State. Carnley [v. Cochran], 369 U.S. [506] at 517, 82 S.Ct. [884] at 890-91, [8 L.Ed.2d 70 (1962)]. Presuming a waiver from a silent record is impermissible. Carnley.' *Page 440 
 "Tomlin, 601 So.2d at 128 (emphasis added); see also Stanley v. State, 703 So.2d 1027 (Ala.Cr.App. 1997). In determining whether a defendant knowingly and intelligently waived his right to counsel, this court must look to the `totality of the circumstances' in each particular case. Tomlin, 601 So.2d at 129.
710 So.2d at 540-41.
The record in this case does not show that Ardis clearly and unequivocally waived his right to counsel. To the contrary, the record shows that the trial court, after allowing Ardis's appointed counsel (who had been appointed only several hours earlier) to withdraw, proceeded to trial and, during the voir dire examination, informed Ardis that he would be representing himself, even after Ardis asked the court to appoint another attorney for him. Clearly, there was no express waiver of counsel by Ardis.
Not only do we not find an express waiver of the right to counsel, we find that there was no implied waiver.
 "`"A valid waiver of counsel need not be express. However, courts are hesitant to validate an implied waiver. Nevertheless, a court may infer a knowing and intelligent waiver if the defendant fails to retain counsel after repeated urging by the court or discharges counsel in midtrial after explicit warnings."' Wheeler v. State, 553 So.2d 652, 653
(Ala.Cr.App. 1989), quoting Project: Criminal Procedure, 76 Geo.L.J. 921, 928-30 (1988) (emphasis omitted)."
Cobble, 710 So.2d at 541. The record does not show that Ardis, whom the trial court determined was indigent, was either repeatedly urged by the trial court to retain counsel or that he discharged his counsel in the middle of the trial after explicit warnings from the trial court. Although his appointed attorney came into court and informed the trial court that Ardis was not satisfied with his representation and that Ardis was not cooperative, Ardis did not, contrary to the trial court's finding, "fire" his attorney. The trial court, instead, simply permitted Ardis's appointed attorney to withdraw, after only a few hours of representing Ardis, and then immediately proceeded to conduct the trial; it required Ardis to represent himself. Ardis's act of simply expressing dissatisfaction with his attorney does not, in our judgment, imply that he knowingly and voluntarily waived his right to legal representation. In sum, the record before us does not provide the requisite showing that Ardis knowingly acted in a manner that met the test for an implied waiver of counsel.
While we might infer from the trial court's actions in this case that the court considered Ardis to be making unfounded and unsubstantiated accusations about the ability of his appointed attorney to represent him, the record does not contain any findings by the trial court in this regard. Even assuming that such findings had been made, we cannot uphold the trial court's decision to require Ardis to represent himself at trial. Again, we quote from Cobble:
 "In Leslie v. State, 703 So.2d 1029 (Ala.Cr.App. 1997); Stanley [v. State], 703 So.2d [1027] at 1029 [(Ala.Cr.App. 1997)]; and Watkins v. State, 708 So.2d 236
(Ala.Cr.App. 1997), three cases recently decided by this court which were factually similar to the instant case, we held that the trial court, instead of requiring the defendant to represent himself at trial, should have done one of the following: (1) denied the attorney's motion to withdraw; (2) appointed a new attorney to represent the defendant at trial; (3) granted the defendant's request for a continuance to allow him to retain counsel; or (4) determined whether the defendant wanted to represent himself *Page 441 
and, if so, engaged the defendant in a colloquy to determine whether he understood all of the implications involved in self-representation. Any of the above actions would have been appropriate here; requiring the appellant to represent himself was not.
 "`"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused — whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."'
 "Teske v. State, 507 So.2d 569, 570 (Ala.Cr.App. 1987), quoting Johnson v. Zerbst, 304 U.S. 458, 464-65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (emphasis added in Teske).
 "By this opinion, we do not want to tie the hands of trial judges dealing with defendants who are attempting to delay a disposition of their cases; nor do we intend to imply that a trial court must appoint new counsel every time a defendant expresses dissatisfaction with his representation.
 "`"[T]he right to assistance of counsel does not imply the absolute right to counsel of one's choice. A defendant's right to obtain counsel of his choice must be balanced against the need for the efficient and effective administration of criminal justice."'
 "Wheeler [v. State], 553 So.2d [652] at 653 [(Ala.Cr.App. 1989)], quoting United States v. Weninger, 624 F.2d 163, 166 (10th Cir.), cert. denied, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470
(1980)."
710 So.2d at 542.
Given the facts and circumstances of this case, we find that the trial court erred in requiring Ardis to represent himself at trial and in so doing denied Ardis his constitutional right to counsel. Therefore, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMillan, Cobb, Baschab, and Fry, JJ., concur.