Rel: May 2, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

————————————————

## CR-2023-0514

————————————————

## T.L.B.

## v.

## State of Alabama

## Appeal from Morgan Circuit Court
## (CC-18-1562 and CC-18-1563)

ANDERSON, Judge.

T.L.B. was convicted in case number CC-18-1562 of one count of first-degree kidnapping, see § 13A-6-43, Ala. Code 1975, one count of first-degree rape, see § 13A-6-61, Ala. Code 1975, one count of first-degree sodomy, see § 13A-6-63, Ala. Code 1975, one count of second-degree

domestic violence, see § 13A-6-131, Ala. Code 1975, and one count of first-degree burglary, see § 13A-7-5, Ala. Code 1975. He was also convicted in case number CC-18-1563 of violating a domestic-violence protection order, see § 13A-6-142, Ala. Code 1975. In case number CC-18-1562, the Morgan Circuit Court sentenced T.L.B. as a habitual felony offender with two prior felony convictions to 99 years' imprisonment for each of his convictions for first-degree kidnapping, first-degree rape, first-degree sodomy, and first-degree burglary and to 15 years' imprisonment for his conviction for second-degree domestic violence. The sentences for T.L.B.'s first-degree-kidnapping conviction, first-degree-rape conviction, and second-degree-domestic-violence conviction were ordered to run concurrently with each other, and the sentences for his convictions of first-degree sodomy and first-degree burglary were ordered to run concurrently with one another. However, his sentences for his convictions of first-degree sodomy and first-degree burglary were ordered to run consecutively with his sentences for his convictions of first-degree kidnapping and first-degree rape. In case number CC-18-1563, T.L.B. was ordered to serve 90 days' imprisonment, to run concurrently with his sentences in case number CC-18-1562.

2

Facts and Procedural History

The resolution of this appeal stems from issues unrelated to the evidence presented at trial. Thus, a recitation of the facts underlying the offenses is unnecessary.

On December 7, 2018, a Morgan County grand jury issued an indictment charging T.L.B. with first-degree kidnapping, first-degree rape, first-degree sodomy, second-degree domestic violence, and first-degree burglary. The same day, the grand jury issued a separate indictment charging him with one count of violating a domestic-violence protection order.

The record indicates that, on or about January 8, 2020, T.L.B. filed a motion requesting that the court allow his appointed counsel, Kevin D. Teague, to withdraw as his trial counsel, claiming that counsel had "failed to have any meaningful communication with [T.L.B.] and [counsel's] ineffective representation cannot be reconciled." (C. 29.) On January 14, 2020, Teague filed a motion to withdraw as attorney of record, alleging that there had been a breakdown in the client/attorney relationship. Teague denied the allegations raised in T.L.B.'s motion seeking new counsel, and Teague asserted that "there [have] been

numerous discussions concerning these cases and [T.L.B.] has been provided with the evidence package provided by the District Attorney." (C. 30.) In a pro se letter to the court dated January 16, 2020, T.L.B. again sought to have Teague removed as his trial counsel, claiming that it was a violation of his civil rights to ignore his request to have a different lawyer represent him and insisting that he would not go to trial with Teague as his counsel. (C. 33-34.)

On January 31, 2020, Morgan Circuit Judge Jennifer M. Howell issued an order allowing Teague to withdraw as T.L.B.'s counsel and appointing Jim Smith to represent T.L.B.

In a pro se letter dated June 15, 2020, T.L.B. informed the circuit court that he had yet to hear from his new counsel, that he did not believe counsel was acting in his best interest, and that counsel was "insufficient." (C. 51.) In a letter to the circuit court dated June 19, 2020, T.L.B. stated:

> "P.S. Attorney's [sic] do not know how the system work[s], due to their indoctrination. If I can find an attorney who will do as I say then I will prevail, but most attorney's [sic] would rather keep their BAR CARDS, rather than BEHAVE IN HONOR."

(C. 52 (capitalization in original).) T.L.B. filed other letters objecting to Smith's serving as his trial counsel.

4

On November 18, 2021, the circuit court entered an order indicating that Smith, T.L.B.'s second trial counsel, had moved to withdraw as T.L.B.'s counsel "based upon his contract not being renewed for indigent defense," and, for that reason, the circuit court granted Smith's motion to withdraw as T.L.B.'s counsel. Thereafter, the circuit court appointed the Thomas Di Giulian to represent T.L.B.

T.L.B.'s trial was continued and reset multiple times over the following year.

On February 25, 2023, Di Giulian filed a "Motion for Leave to Withdraw" as T.L.B.'s counsel. (C. 99.) In his motion, Di Giulian stated the following:

> "1.) The undersigned went to see the Defendant in the Morgan County Jail on Saturday, February 25, 2023, in order to finalize trial preparations. The Defendant's trial is set for trial February 27, 2023;
>
> "2.) The Defendant would not provide the undersigned with information regarding his clothing sizes so that the undersigned could obtain 'court clothes' for him to wear during this trial;
>
> "3.) The Defendant would not answer questions posed to him about the facts of the case, and was extremely argumentative, became loud, stood up and waved his arms around;
>
> "4.) The Defendant would not cooperate with the undersigned;

"5.) At least three (3) times the Defendant stated that he did not want the undersigned to represent him at the trial;

"6.) This occurred in jail visitation room AC-1, which has a safety glass partition between the inmate and the visitor;

"7.) The undersigned has never, in forty seven (47) years of law practice, been in fear of his physical safety because of a client;

"8.) The undersigned believes that had there not been a partition between him and the Defendant, that the [Defendant] may have assaulted him;

"9.) The undersigned is concerned that if he is required to continue to represent the Defendant, his physical safety will be in danger."

(C. 99.)

Trial proceedings began on February 27, 2023, and continued through the following day, with Morgan Circuit Judge Stephen F. Brown presiding. The record indicates that, on the first day of trial, T.L.B. represented himself pro se with Di Giulian serving as advisory counsel. On the second day of trial, February 28, 2023, T.L.B. refused to return to court and Judge Brown appointed Di Giulian to represent T.L.B. for the remainder of the trial.

T.L.B. was found guilty of all counts as charged in both indictments. Following a sentencing hearing at which T.L.B. was present, he was

sentenced as a habitual felony offender with two prior felony convictions on June 27, 2023. T.L.B. timely filed a notice of appeal.

<u>Discussion</u>

On appeal, T.L.B. argues that the circuit court committed reversible error when it forced him to proceed pro se without an effective waiver of counsel. Although T.L.B. raises other issues in his brief on appeal, because we find this issue to be determinative of the appeal, we pretermit discussion of the other issues.

As an initial matter, it is apparent from the record that T.L.B. considers himself a "sovereign citizen" and holds many peculiar beliefs about the judicial system; among those are his beliefs that the criminal charges against him and the orders setting his trial were mere "invitations" that he could refuse. <u>See, e.g.</u> (C. 49-57, 59-60, 123-129). While T.L.B.'s peculiar -- and incorrect -- beliefs complicated the proceedings below and were doubtless frustrating to the circuit court, ultimately this case turns on whether the record shows that T.L.B. gave an effective waiver of counsel before representing himself on the first day of his trial.

The record shows that, before trial, two separate attorneys had been allowed to withdraw as counsel for T.L.B.[1] Two days before trial, T.L.B.'s third appointed counsel, Di Giulian, requested to withdraw as counsel, citing T.L.B.'s failure to cooperate, T.L.B.'s wish for Di Giulian to not represent him, and Di Giulian's own fear for his personal safety as reasons for seeking to withdraw. On the first day of trial, the circuit court called the case for trial. The circuit court stated:

> "THE COURT: All right. Let's go on the record in CC-18-1562 and 1563, State of Alabama versus [T.L.B.] State is here represented by Mr. Joe Lewis and [T.L.B.] is here pro se, but Judge Howell earlier this morning allowed Mr. Tom Di Giulian, an attorney here in town, to serve as advisory counsel only to [T.L.B.]"

(R. 5.)

The circuit court then asked the parties whether they had anything they wanted to put on the record before the jury was brought into the courtroom. The following transpired:

> "THE COURT:   [T.L.B.], do you have anything you want the Court to know.
>
> "[T.L.B.]:   I was going to say I'm not represented by an attorney.

---

[1] The motions to withdraw appear to have been precipitated in some part by T.L.B.'s disagreement with counsel over their refusal to follow his instructions to advance his legal theories. (C. 52, 59, 60.)

"THE COURT:  I --

"[T.L.B.]:  You said I'm pro se.

"THE COURT:  Yeah.

"[T.L.B.]:  But I have the right to an attorney, to counsel, and to confront my accuser, right? So I don't have no lawyer. I don't have nothing to say right now.

"THE COURT:  All right. Well --

"[T.L.B.]:  I got no counsel. I don't have nobody sitting here or nothing.

"THE COURT:  Well, we're about to start a trial and you're representing yourself in this matter --

"[T.L.B.]:  No, I ain't, I ain't said I'm going to represent myself, though. That's what she said.

"THE COURT:  All right. Well, the trial is going to start and you're going to be representing yourself.

"[T.L.B.]:  I'm not.

"THE COURT:  All right. Well, yeah, you are. You're going to go through the trial without an attorney.

"[T.L.B.]:  I won't come back over. They can't make me come back over. I mean …

"THE COURT:  That's going to be your -- We can try -- We can do a trial without you here if that's what you're --

9

"[T.L.B.]:       No, you can't.

"THE COURT:   Yes, we can.

"[T.L.B.]:       Oh, try it.

"THE COURT:   I will. That's how it works.

"[T.L.B.]:       Okay.

"THE COURT:   It's your right to be here.

"[T.L.B.]:       Right. And I don't have to be here. So I could leave now.

"THE COURT:   But we can continue with the trial.

"[T.L.B.]:       Oh, no, continue and take me back across the street.

"THE COURT:   Well, I'm going to leave you over here for now--

"[T.L.B.]:       That's what I'm trying to tell you, though, you can't do all that that you say you're going to do.

"THE COURT:   Yeah. Well, I'm about to.

"[T.L.B.]:       That -- Well, you can do what you want to.

"THE COURT:   Thank you. Mr. Bailiff, can you bring our jury in?"

(R. 7-9.) It is apparent from this exchange that, before the start of trial, proceedings of some nature had been held on Di Giulian's motion to

withdraw and that the result was that T.L.B. proceeded to trial pro se. Unfortunately, the record is silent as to what those proceedings were. No transcripts of any hearing on the motion appear in the record, and the record does not contain any order disposing of the motion. In attempting to resolve the question whether T.L.B. effectively waived the right to counsel, this Court is left with only the above exchange and a bare notation in the case-action summary indicating that on March 1, 2023 -- after the trial had concluded -- the motion to withdraw was "disposed by separate order." Nonetheless, on the first day of trial, T.L.B. represented himself, with Di Giulian serving as advisory counsel.

This Court has recognized:

> "The Sixth Amendment to the United States Constitution guarantees a right to counsel in criminal proceedings.  See also Art. I, § 6, Ala. Const. 1901; Rule 6.1(a), Ala. R. Crim. P. At the same time, a defendant in a criminal proceeding has a right under the Sixth Amendment to waive his right to counsel and to conduct his own defense. See Faretta v. California, 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (recognizing the right to self-representation); Tomlin v. State, 601 So. 2d 124, 128 (Ala. 1991)."

Moody v. State, 888 So. 2d 532, 553-54 (Ala. Crim. App. 2003). This Court has also held that a claim challenging whether a defendant's Sixth Amendment right to counsel has been violated is a jurisdictional claim

11

that may be raised for the first time on appeal. See Connell v. City of Daphne, 292 So. 3d 1129, 1132 (Ala. Crim. App. 2019); Woodruff v. City of Pelham, 1 So. 3d 157, 159 (Ala. Crim. App. 2008); Berry v. State, 630 So. 3d 127, 130 (Ala. Crim. App. 1993).

In Connell, this Court explained:

"In Carnley v. Cochran, 369 U.S. 506, 516-17, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), the United States Supreme Court held that '[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' 'Presuming waiver from a silent record is impermissible.' Id. at 516, 82 S.Ct. 884. As this Court has stated, '[t]he right to counsel does not depend upon a request by the accused.' Berry [v. State], 630 So. 2d [127,] 129 [(Ala. Crim. App. 1993)] (citing Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971)). 'If a defendant in a criminal proceeding is not represented by counsel, the State must prove an intentional relinquishment of that right.' Berry, 630 So. 2d at 129 (citing Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). As the Alabama Supreme Court stated in Ex parte Shelton, 851 So. 2d 96 (Ala. 2000):

"'To establish a knowing and intelligent waiver of counsel, "the record at the outset of the trial should establish three factors: 1) that the defendant was informed that he had the right to counsel, 2) that the defendant was informed that if he could not afford counsel the state would appoint counsel to represent him, and 3) an affirmative showing by the defendant that, understanding these rights, he still elects to proceed without counsel."'

12

"851 So. 2d at 101 (quoting Jenkins v. State, 482 So. 2d 1315, 1317 (Ala. Crim. App. 1985)).

"The United States Supreme Court has held that, 'in order to represent himself, the accused must "knowingly and intelligently" forgo' the benefits of counsel. Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting Johnson v. Zerbst, 304 U.S. at 464-65, 58 S.Ct. 1019). The Court explained that, '[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."' 422 U.S. at 835, 95 S.Ct. 2525 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). 'If the record is not clear as to the defendant's waiver and request of self-representation, the burden of proof is on the State.' Tomlin v. State, 601 So. 2d 124, 128 (Ala. 1991) (citing Carnley, 369 U.S. at 517, 82 S.Ct. 884). 'A waiver of counsel can only be effectuated when the defendant asserts a "clear and unequivocal" right to self-representation.' 601 So. 2d at 128 (quoting Westmoreland v. City of Hartselle, 500 So. 2d 1327, 1328 (Ala. Crim. App. 1986)). Once the clear and unequivocal assertion of self-representation is made, this Court 'looks to a totality of the circumstances involved in determining whether the defendant knowingly and intelligently waived his right to counsel.' 601 So. 2d at 129 (citing Jenkins v. State, supra). The first test, however, is whether there is a clear and unequivocal assertion of the right to self-representation. If there was no such assertion, we do not apply the totality-of-the-circumstances test to determine if that waiver of counsel and assertion of self-representation was knowing and voluntary."

292 So. 3d at 1133.

13

This Court addressed a similar situation in Cobble v. State, 710 So. 2d 539 (Ala. Crim. App. 1998). In Cobble, the defendant initially appeared at his arraignment and informed the trial court that he wanted to hire an attorney; however, after two failed attempts to hold arraignment due to Cobble's failure to retain counsel, the trial court appointed counsel for the defendant. 710 So. 2d at 540. The case proceeded with appointed counsel representing Cobble until a few weeks before trial, when Cobble appeared in court for a settlement docket, stated that he was dissatisfied with his counsel, and asked that counsel be allowed to withdraw. Id. After the trial court discussed Cobble's complaints concerning his counsel, the trial court found that the complaints were "unfounded" and that Cobble "merely [was] unwilling to accept her honest legal advice and recommendations about how he should proceed" in his case. Id. Regardless, the trial court in Cobble permitted counsel to withdraw, "finding that [Cobble] had deliberately created conflicts with [trial counsel] by making unwarranted accusations, that his conduct was purposeful, and that he had effectively waived his right to trial counsel." Id.

14

Cobble requested that another attorney be appointed to represent him at trial, and the trial court denied that request. Id. The trial court further ordered that counsel was to remain in the case as standby counsel. Id. On the day of trial, Cobble appeared and requested a continuance in order for him to retain counsel. The trial court denied the request, finding that Cobble had given "no justifiable cause or reason for his failure to retain an attorney" and that Cobble had "intentionally engaged in tactics regarding legal representation for the purpose of delaying a final disposition of this case." Id. Cobble subsequently pleaded guilty to the offense charged, with counsel acting as standby counsel. Id.

This Court held in Cobble:

"In the instant case, the record does not show that the appellant made a 'clear and unequivocal' waiver of his right to counsel. In fact, the record reveals that the trial court informed the appellant that he would be representing himself, even after the appellant asked the trial court to appoint another attorney to represent him. The appellant never expressed a desire to represent himself at trial.

"… .

"Although we do not necessarily disagree with the trial court's findings that the appellant was engaging in dilatory tactics by making unwarranted accusations against his trial counsel, we cannot uphold the trial court's peremptory ruling that the appellant, as a result of these actions, knowingly waived his right to trial counsel. In Leslie [v. State], 703 So.

15

2d 1029 (Ala. Crim. App. 1997); <u>Stanley [v. State]</u>, 703 So. 2d [1027,] at 1028 [(Ala. Crim. App. 1997)]; and <u>Watkins v. State</u>, 708 So. 2d 236 (Ala. Crim. App. 1997), three cases recently decided by this court which were factually similar to the instant case, we held that the trial court, instead of requiring the defendant to represent himself at trial, should have done one of the following: (1) denied the attorney's motion to withdraw; (2) appointed a new attorney to represent the defendant at trial; (3) granted the defendant's request for a continuance to allow him to retain counsel; or (4) determined whether the defendant wanted to represent himself and, if so, engaged the defendant in a colloquy to determine whether he understood all of the implications involved in self-representation. Any of the above actions would have been appropriate here; requiring the appellant to represent himself was not.

"'"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused -- whose life or liberty is at stake -- is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to <u>appear upon the record</u>."'

"<u>Teske v. State</u>, 507 So. 2d 569, 570 (Ala. Crim. App. 1987), quoting <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464-65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (emphasis added in <u>Teske</u>).

"By this opinion, we do not want to tie the hands of trial judges dealing with defendants who are attempting to delay a disposition of their cases; nor do we intend to imply that a trial

16

court must appoint new counsel every time a defendant expresses dissatisfaction with his representation.

> "'"[T]he right to assistance of counsel does not imply the absolute right to counsel of one's choice. A defendant's right to obtain counsel of his choice must be balanced against the need for the efficient and effective administration of criminal justice."'

"Wheeler [v. State], 553 So. 2d [652] at 653 [(Ala. Crim. App. 1989)], quoting United States v. Weninger, 624 F.2d 163, 166 (10th Cir.), cert. denied, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

> "However, under the facts of this case, we must conclude that the trial court erred in finding that the appellant knowingly waived his right to trial counsel."

710 So. 2d at 541-42.

Likewise, in Stanley v. State, 703 So. 2d 1027 (Ala. Crim. App. 1997), Stanley informed the trial court that he wished to fire his second court-appointed attorney, and the trial court responded by informing Stanley that he was going to represent himself and they were going to try the case. Id. at 1028. Because this Court found that the colloquy between the trial court and Stanley made it clear that there was no waiver of counsel because the trial court had merely informed Stanley that he would be representing himself, even after Stanley had requested new counsel, this Court held that Stanley had not made a "clear and

17

unequivocal" waiver of his right to counsel and reversed Stanley's conviction. Id. at 1029.

A very similar situation also occurred in Leslie v. State, 703 So. 2d 1029 (Ala. Crim. App. 1997), wherein this Court reversed Leslie's conviction because the record established that Leslie had not clearly waived his right to counsel, yet the trial court informed Leslie that he would be representing himself.

In the present case, we have combed the record and find no instance when T.L.B. made a clear and unequivocal waiver of his right to counsel. In fact, to the contrary, the record reveals that T.L.B. repeatedly asserted his right to counsel. Judge Brown, before the beginning of trial proceedings on the first day of trial, informed T.L.B. that he would be representing himself pro se and stated: "Judge Howell earlier this morning has allowed Mr. Tom Di Giulian … to serve as advisory counsel only to [T.L.B.]" (R. 5.) However, the record is devoid of a transcript of any proceedings conducted by Judge Howell. Likewise, Di Giulian also later indicated to Judge Brown that Judge Howell had granted his motion to withdraw during the pretrial proceedings, but the record also does not contain any written order explaining that T.L.B. had clear and

18

unequivocally waived his right to counsel. These facts alone would be sufficient to require this Court to grant relief. Tomlin v. State, 601 So. 2d 124, 128 (Ala. 1991) ("Presuming a waiver from a silent record is impermissible."); see also Carnley v. Cochran, 369 U.S. 506, 516 (1962).

But even if the record established that T.L.B. had clearly waived his right to counsel before Judge Howell, the colloquy between Judge Brown and T.L.B., during which T.L.B. asserted his right to counsel, occurred after the hearing conducted by Judge Howell, and T.L.B. had a right to withdraw the waiver of his right to counsel at any time. See Rule 6.1(c), Ala. R. Crim. P. The record before this Court establishes that, when Judge Brown informed T.L.B. that he would be representing himself, T.L.B. very clearly indicated that he did not wish to represent himself at trial. Therefore, based on Cobble, Stanley, Leslie, and the cases cited therein, T.L.B.'s constitutional right to counsel was denied because it is obvious from the record that T.L.B. did not make a "clear and unequivocal" waiver of his right to counsel.

The State argues in its brief that, while T.L.B. does have an absolute right to counsel, he does not have an absolute right to be represented by any particular counsel. This Court has held that "an

19

indigent defendant who requires counsel appointed by the court at the State's expense has no right to choose the counsel to be appointed." Lane v. State, 80 So. 3d 280, 295 (Ala. Crim. App. 2010); see also Ex parte Moody, 684 So. 2d 114, 121-22 (Ala. 1996) ("[A]n indigent defendant is not entitled to legal counsel of his choice, when counsel is to be paid by public funds, but rather is entitled to competent legal representation."). The State further cites Rule 6.1(b), Ala. R. Crim. P., which provides:

> "If an indigent defendant who has refused appointed counsel in order to obtain private counsel appears without counsel at any proceeding after having been given a reasonable time to retain counsel, the court shall appoint counsel unless the indigent defendant waives his right under this rule. If the indigent defendant continues to refuse appointed counsel, the cause shall proceed."

While we agree that T.L.B. does not have a right to choose the particular counsel that is appointed to represent him, we do not conclude that the facts of this particular case fall under the purview of Rule 6.1(b) such that it would excuse the circuit court's violation of T.L.B.'s constitutional right to counsel here. Again, the record is clear that T.L.B. did not express an intention to retain counsel; rather, he sought new appointed counsel.

We recognize that before T.L.B.'s trial date, the circuit court had previously allowed two separate defense counsel to withdraw from representing T.L.B. T.L.B.'s first appointed counsel filed a motion to withdraw, citing a breakdown in the attorney-client relationship. Although T.L.B.'s second counsel was allowed to withdraw for other reasons, the record shows that T.L.B. had previously expressed his unhappiness with his second counsel and asked the circuit court to allow his second counsel to withdraw because he believed that counsel was not acting in his best interest and was "insufficient." After the withdrawal of T.L.B.'s second appointed counsel, the circuit court appointed Di Giulian as T.L.B.'s third appointed counsel. Two days before trial, Di Giulian sought to withdraw due to an incident in which T.L.B. had been uncooperative and caused counsel to fear for his personal safety. At that point, T.L.B. also requested that his third appointed counsel, Di Giulian, be allowed to withdraw. However, instead of insisting that Di Giulian continue his representation of T.L.B. or obtaining a proper waiver of T.L.B.'s right to counsel, the circuit court subsequently allowed Di Giulian to withdraw from representing T.L.B., which did not comport with Rule 6.1(b).

In reversing and remanding, we wish to be abundantly clear that we do not endorse any strategy on T.L.B.'s part of objecting to whichever counsel has been appointed to represent him as a dilatory tactic. As we have previously held, a "criminal defendant cannot use the right to counsel of choice 'as a means to delay judicial proceedings.' " Lane, 80 So. 3d at 299. Nor is T.L.B.'s right to counsel of his choice unfettered. In Wheat v. United States, 486 U.S. 153, 159 (1988), the Court recognized that a defendant is not entitled to counsel (1) who is not a member of the bar; (2) whom the defendant cannot afford; (3) who is unwilling to represent him; or (4) who is laboring under a conflict of interest. Similarly, T.L.B. would not be entitled to an attorney who is willing to embrace his own peculiar legal theories or strategies. McCoy v. Louisiana, 584 U.S. 414 (2018) ("Trial management is the lawyer's province"; counsel makes decisions about "what arguments to pursue.").

Again, we wish to be abundantly clear that today's decision should not be construed as allowing defendants an opportunity to use their right to counsel as a weapon to "obstruct the orderly procedure of the courts or interfere with the fair administration of justice." Robinson v. State, 581

So. 2d 1197, 1200 (Ala. Crim. App. 1990). As this Court explained in

Stanley:

> "We are not unmindful of the trial court's frustration in this matter. The appellant was attempting to have the trial court appoint yet another attorney to represent him on the eve of the trial. However, the solution was not for the trial court to summarily violate one of the appellant's basic constitutional rights. The trial court should have (1) refused to dismiss the appellant's second appointed attorney; (2) appointed another attorney and continued the case; or (3) engaged in a sufficient dialogue to discover if the appellant wished to represent himself and, if so, determined if the appellant understood all the implications of this waiver."

703 So. 2d at 1029.

Consequently, based on the foregoing, we are compelled to reverse the judgment of the circuit court and remand the cause for further proceedings.

REVERSED AND REMANDED.

Windom, P.J., and Kellum, Cole, and Minor, JJ., concur.